FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2016 MAY 25 PM 3:29
CLERK
SO. DIST. OF GA.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

DHL PROJECT & CHARTERING LIMITED

Plaintiff,

vs.

NEWLEAD HOLDINGS LTD.,
NEWLEAD SHIPPING S.A.,
NEWLEAD BULKERS S.A.
NEWLEAD CASTELLANO LTD.,
GRAND VENETICO INC.,
NEWLEAD VENETICO LTD.

Defendants.

CIVIL ACTION FILE
NO. ____________________

CV416-123

**VERIFIED COMPLAINT**

Plaintiff, DHL Project & Chartering Limited ("DHL" or "Plaintiff"), through undersigned counsel, and as for its Verified Complaint against Newlead Holdings Ltd., Newlead Shipping S.A., Newlead Bulkers S.A., Newlead Castellano Ltd., Grand Venetico Inc. and Newlead Venetico Ltd. and stating an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, alleges as follows:

**JURISDICTION AND VENUE**

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

2. DHL brings this action to obtain security for a maritime claim pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule

B"), seeking an order and writ of maritime attachment and garnishment over a vessel which is presently located within the District.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

**THE PARTIES**

4. At all times relevant hereto, DHL is and was a foreign business entity organized under the laws of a foreign state, having an address at L23, Tower 1, Kowloon Commerce Centre, No. 51 Kwai Cheong Road, Kwai Chung, New Territories, Hong Kong. DHL was formerly known as DHL Project & Chartering (China) Limited, including during the time of the relevant transactions.

5. At all times relevant hereto, Newlead Holdings Limited ("Newlead Holdings") is and was a business entity organized and existing under the laws of Bermuda, with an address at 83 Akti Miaouli & Flessa Str., Piraeus, Greece 185 38. Newlead Holdings was delisted from the NASDAQ Global Select Stock Market where it was traded under the symbol NEWL. It is currently traded on the OTC market. Newlead Holdings describes itself as "an international, vertically integrated shipping company that manages product tankers and dry bulk vessels."

6. At all times relevant hereto, Newlead Shipping S.A. ("Newlead Shipping") is and was a business entity organized and existing under the laws of Panama, with an address at 83 Akti Miaouli & Flessa Str., Piraeus, Greece 185 38. Newlead Shipping is a purported subsidiary of Newlead Holdings and was DHL's contractual counterparty for the charter of the vessel M/V NEWLEAD VENETICO (IMO No. 8521189) ("Newlead Venetico"), the contract pursuant to which DHL's claim arises.

7. At all times relevant hereto, Newlead Bulkers S.A. ("Newlead Bulkers") is and was a business entity organized and existing under the laws of Liberia, with an address at 83 Akti

Miaouli & Flessa Str., Piraeus, Greece 185 38. Newlead Bulkers is a purported subsidiary of Newlead Holdings. Newlead Bulkers is listed as the commercial manager for the vessel M/V Newlead Venetico (IMO No. 8521189), successor vessel M/V Newlead Venetico (IMO No. 9640413), and the M/V Newlead Castellano (IMO No. 9686338).

8. At all times relevant hereto, Newlead Castellano Ltd. is and was a business entity organized and existing under the laws of Liberia with a registered office at 80 Broad Street, Monrovia, Republic of Liberia. Newlead Castellano Ltd. is a subsidiary of Newlead Holdings and is a single asset company owning only the vessel M/V NEWLEAD CASTELLANO (the "Vessel").

9. At all times relevant hereto, Grand Venetico Inc. was a business entity organized and existing under the laws of the Marshall Islands. Grand Venetico Inc. was a subsidiary of Newlead Holdings and was a single asset company owning only the vessel Newlead Venetico, IMO No. 8521189. The Newlead Venetico was sold for by Newlead Shipping and Newlead Holdings in 2012 leaving Grand Venetico an assetless shell. The Newlead Venetico was later scrapped. Grand Venetico Inc.'s registration in the Marshall Islands has since been annulled.

10. At all times relevant hereto, Newlead Venetico Ltd. was a business entity organized and existing under the laws of the Marshall Islands. Newlead Venetico Ltd. is a subsidiary of Newlead Holdings and is a single-purpose entity relating to the charter of the successor vessel Newlead Venetico, IMO No. 9640413.

11. The Vessel is currently located within the Southern District of Georgia and has been arrested and attached pursuant to a warrant of maritime arrest and writ of attachment pursuant to

Rules B and C dated April 19, 2016 obtained by plaintiffs in Civil Action No. 4:16-cv-93 (JRH)(GRS).[1]

12. Newlead Shipping and Newlead Holdings are the beneficial owners of the Vessel, the vessel Newlead Venetico which was sold (IMO No. 8521189), as well as beneficial owners of the successor vessel called M/V Newlead Venetico (IMO No. 9640413) (referred to herein as the "successor Newlead Venetico").

**BACKGROUND**

13. DHL entered into a time charterparty by fixture recap with Newlead Shipping for the vessel Newlead Venetico, pursuant to a New York Produce Exchange 1946 form, with relevant amendments, dated October 27, 2011 (with an extension and direct continuation on December 9, 2011). A true and correct copy of the fixture recap with charter party form and confirmation of owners' full style as "Newlead Shipping S.A." is attached hereto as Exhibit 1.

14. Pursuant to the charterparty, Newlead Shipping and Grand Venetico Inc. were obliged *inter alia* to exercise due diligence to make the Newlead Venetico seaworthy before and at the beginning of each voyage including on delivery, and to maintain the vessel's class and keep her in a thoroughly efficient state in hull, machinery and equipment for and during the service.

15. On December 8, 2011, DHL subchartered the Newlead Venetico to Zhejiang Materials Industry Environmental Energy Co Ltd. (formerly known as Zhejiang Materials Industry Fuel Group Co., Ltd.) ("Zhejiang") for a voyage carrying a cargo of coal from Australia to China. A true and correct copy of the fixture note with Zhejiang is attached hereto as Exhibit 2.

16. On January 4, 2012, shortly after loading commenced, the Newlead Venetico was detained by the Australian Maritime Safety Authority ("AMSA") due to various deficiencies

[1] There is currently a pending motion to vacate the arrest and attachment of the Vessel (16-cv-93, Dkt. 15).

having been identified, including two vertical cracks in the hull plating of the vessel and according to AMSA, no functioning Safety Management System. Loading resumed on or about 3 March 2012 and the vessel completed loading and commenced her voyage to the discharge port in China on or about 5 March 2012.

17. Despite Newlead Bulkers publicly representing that it was the commercial manager of the Newlead Venetico, during the detention of the vessel in Australia, various employees at Newlead Shipping communicated with DHL regarding the detention of the vessel, including Sozon Alifragis, Chief Commercial Officer at Newlead Shipping, and Katerina Gavra, Senior Operator at Newlead Shipping. No employee at Newlead Bulkers was ever involved in the operation of the Newlead Venetico.

18. As a result of the detention in Australia, DHL's subcharterer Zhejiang alleges it incurred significant losses resulting from the delayed delivery of the cargo.

19. Zhejiang has advanced a significant claim for the losses in Hong Kong arbitration pursuant to the voyage charter in the amount of $14,303,762.90. A true and correct copy of the claim (advanced through defense and counterclaim submissions) in the Hong Kong arbitration is attached hereto as Exhibit 3.

20. Upon a finding by the Hong Kong arbitration panel that there was a personal want of due diligence on the part of Newlead Shipping and/or Grand Venetico Inc. to make the Newlead Ventico seaworthy, for which DHL is responsible, DHL will be liable to Zhejiang and will thereafter pursue its claim against Newlead Shipping and/or Grand Venetico Inc. in London Arbitration for indemnity pursuant to the time charter. DHL seeks security for this maritime claim.[2]

---

[2] Where the underlying liability proceeding has been commenced, court have found that a contingent indemnity claim is ripe for adjudication, and security may be obtained for that claim pursuant to Supplemental Admiralty Rule B.

**FIRST CAUSE OF ACTION: BREACH OF CONTRACT AGAINST NEWLEAD SHIPPING S.A., NEWLEAD BULKERS S.A. AND GRAND VENETICO INC.**

21. DHL has a contingent indemnity claim against Newlead Shipping, Newlead Bulkers and Grand Venetico Inc. for breach of the charter party in connection with the deficiencies found with the vessel shortly after loading commenced in Australia in December 2011, including the cracking of the hull of the Newlead Venetico.[3]

22. As agents and commercial managers for the nominal owner, Newlead Shipping and Newlead Bulkers are ultimately responsible for the technical aspects of the vessel and were required to maintain the vessel in a thoroughly efficient state; furthermore, as the party that contracted as Owners under the charter party, bore a duty to maintain the vessel and to exercise due diligence to make the vessel seaworthy.

23. Additionally, Grand Venetico Inc. as the registered nominal owner of the vessel Newlead Venetico is also responsible for fulfilling the Owners' obligations under the charter party, including the duty to maintain the vessel and to exercise due diligence to make the vessel seaworthy.

24. If there is a finding in the sub-charter arbitration that there was a personal want of due diligence to make the vessel seaworthy on the part of Owners for which DHL is responsible, Newlead Shipping, Newlead Bulkers and Grand Venetico Inc. will have breached their obligations to DHL with respect to seaworthiness and maintenance, which caused the detention of the vessel in Australia, the delays in the delivery of cargo, and the losses claimed by DHL's subcharterer.

---

*Navalmar (U.K.) Ltd. v. Welspun Gujarat Sthal Rohren, Ltd.*, 485 F. Supp. 2d 399 (S.D.N.Y. 2007) (citing cases); *cf. Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532 (S.D.N.Y. 2007) (where underlying action not commenced, claim was not ripe).

[3] DHL has a contingent indemnity claim against Newlead Shipping, Newlead Bulkers and Grand Venetico Inc. on grounds that each is an alter ego of the other and has direct contract claims against Newlead Shipping and/or Grand Venetico as "owner(s)" pursuant to the charter party.

25. Because Grand Venetico Inc. was a single-purpose shell entity with no employees or technical capabilities, with Newlead Shipping acting as beneficial owner and Owners under the charter party and Newlead Bulkers as the commercial manager of the vessel, Grand Venentico Inc., and/or Newlead Shipping and Newlead Bulkers have contingent joint and several liability to DHL.

26. Additionally, where the Newlead Venetico has since been sold for scrap and the funds redirected back to the Newlead parent entities, Newlead Shipping, Newlead Bulkers and/or Newlead Holdings have contingent joint and several liability for the contractual breach as successors-in-interest to Grand Venetico Inc.

## SECOND CAUSE OF ACTION: ALTER EGO OF DEFENDANTS NEWLEAD HOLDING LIMITED, NEWLEAD SHIPPING S.A., NEWLEAD BULKERS S.A., NEWLEAD CASTELLANO LIMITED, GRAND VENETICO INC. AND NEWLEAD VENETICO LTD.

### Domination and Control by Newlead Shipping Through its CEO, Michael Zolotas

27. Newlead Holdings has approximately sixty-two (62) subsidiary entities which act as managers, owners and bareboat charterers for the purpose of owning or employing various vessels in the Newlead fleet. Notwithstanding the status of these companies as registered owners of the vessels, the companies are actually single-purpose shell companies, which are so dominated and controlled by Newlead Holdings that they are mere alter egos, which Newlead Holdings uses to carry out its own business.

28. Michael Zolotas, the Chairman, President and Chief Executive Officer of Newlead Holdings exercises complete domination and control over Newlead Holdings and its subsidiaries and has used his complete control to manipulate these subsidiaries as part of a scheme to perpetrate fraud and to personally benefit from the fraudulent inflation of stock prices, contracts entered into

by the Newlead entities with third-party entities controlled by Zolotas, as well as the receipt of millions of dollars in executive compensation.[4]

29. Under the direction of Zolotas, the Newlead entities do not operate at arms' length, but instead are dominated and controlled by Newlead Holdings, including using the assets of the Newlead subsidiaries, including Newlead Castellano Ltd. and Grand Venetico Inc. as collateral in loan agreements which benefit Newlead Holdings, including the fraudulent inflation of its stock price.

30. For example, in *Ray Capital Inc, et al. v. M/V Newlead Castellano, et al.*, Civil Action No. 4:16-cv-93 (S.D. Ga.), it is alleged by the plaintiffs who were owed money by various Newlead subsidiary entities, that Newlead Holdings issued promissory notes secured by a guarantee from Newlead Castellano Ltd., and issued a mortgage over the Vessel to each of the plaintiffs in the respective amounts owed. *See* 16-cv-93, Dkt. 1. These notes are issued and signed by Zolotas. *Id.*, Dkt. 15-1.

31. The Newlead Holdings debts secured by the Vessel were non-maritime in nature, in connection with Newlead Holdings' and related subsidiaries' coal business. *See* 16-cv-93, Dkt. 15 at 2. According to Newlead Holdings' public filings (form 20f for the fiscal year ending December 31, 2014),[5] its coal business is operated through at least eight other subsidiaries,

[4] Zolotas and Jan Berkowitz (former Vice President and Chief Operating Officer of Newlead Holdings) issued millions of shares to themselves as salary and bonuses, and to companies owned by them, their family members and close associates, who were labelled as "consultants" and "vendors." Zolotas paid himself $6 million in compensation in 2013, $4.5 million of which was considered "bonus." Berkowitz was paid approximately $17 million worth of Newlead Holdings' stock on account of coal transactions that were never finalized. In 2013 alone, Zolotas and Berkowitz surreptitiously issued over $43 million in Newlead shares to themselves, a "Financial Advisor," "consultants" and their close associates. N.Y. Sup. Index No. 654414/2013, infra; *see also* Newlead Holdings' public filings, infra.

[5] Newlead Holdings' Form 20f is publicly available through its website and at: http://www.sec.gov/Archives/edgar/data/1322587/000143774915010190/newl20141231_20f.htm (last visited May 11, 2016).

incorporated in the Marshall Islands and the United States. These subsidiaries have nothing to do with the operation of the Vessel or any other vessel owned by the Newlead entities.

32. These coal deals entered into by Zolotas on behalf of Newlead Holdings and its coal-operating subsidiaries were later found to be fraudulent, including forged coal purchase agreements, and the across-the-board default on other agreements related to the coal deals. *See Transasia Commodities Investment Limited v. Newlead JMEG, LLC, et al.*, N.Y. Sup., Index No. 654414/2013. Newlead Holdings subsequently removed the press releases announcing the coal deals from its website. *Id.*

33. Notwithstanding, Newlead Holdings issued "success fees" to a third party, Tiger Capital Ltd. for acting as a broker for these fraudulent contracts. *See* 16-cv-93, Dkt. 15 at 2. The success fees for a fraudulent and failed venture are alleged to be in excess of $6 million. *Id.*, Dkt. 1.

**Disregard of the Corporate Form**

34. Defendants Newlead Holdings, Newlead Shipping, Newlead Bulkers and Newlead Castellano as well as dissolved entity Grand Venetico Inc. and successor-in-interest entity Newlead Venetico Ltd. all share a common address or office, and have overlapping directors, officers, managers, agents and employees.

35. Newlead Holdings' public filing states that Newlead Shipping and Newlead Bulkers have 37 total shoreside employees (i.e., not vessel crew members) as of December 31, 2014. None of the other Newlead subsidiaries has any employees to act on behalf of the subsidiary entities.

36. Although Newlead Bulkers is publicly represented as being the commercial manager for the bulker vessels owned or operated by Newlead Holdings, as seen in the case of the

detention of the Newlead Venetico in Australia, Newlead Shipping actually acts as commercial manager in place of Newlead Bulkers.

37. Newlead Holdings has five directors or corporate officers, with only Michael Zolotas owning 12.3% of the shares of Newlead Holdings. The other four officers and directors do not own shares of Newlead Holdings. Upon information and belief, the other officers and directors act at the direction of Michael Zolotas, have failed to act or vote in a manner contrary to the views of Zolotas and these officers and directors have effectively relinquished all power to Michael Zolotas. Zolotas should be deemed as a matter of law in total control of the Newlead entities, rendering the separateness of the Newlead entities illusory and requiring the corporate veil of these entities to be pierced.

38. The website for all of the Newlead entities is www.newleadholdings.com, and correspondence from Newlead Shipping during the term of the charter party was received by DHL from email addresses at newleadholdings.com as well as from newleadship.com. On visiting the website www.newleadship.com, a visitor is automatically redirected to www.newleadholdings.com.

39. Newlead Holdings files consolidated financial statements for the sixty-two (62) subsidiaries, making it easy to conflate and comingle the accounts of each of the Newlead entities, furthering the ability of Zolotas to move money of Newlead Holdings, Newlead Shipping, Newlead Bulkers, Grand Venetico, Inc., Newlead Castellano Ltd and Newlead Venetico Ltd. into and out of accounts of the group entities.

40. Newlead Shipping, Newlead Bulkers, Newlead Castellano Ltd., Grand Venetico Inc. and Newlead Venetico Ltd. (and the other Newlead subsidiaries) comingle funds and act as paying agents on behalf of each other.



#46342776_v1

41. Although DHL's contractual counterparty was Newlead Shipping (described as a "management company" in the Newlead Holdings' public filings), DHL received certain payments from, and made hire payments to, Grand Venetico Inc. pursuant to the charter party.

42. However, at the end of the charter for the Newlead Venetico, after the Newlead Venetico was scrapped, further charter hire was due from DHL. By email dated June 20, 2012, Newlead Shipping instructed DHL to pay the hire owed to "the new bank account of Newlead Holdings." The bank account beneficiary name was Grand Esmeralda Inc., a subsidiary of Newlead Holdings.

43. The subsidiaries of Newlead Holdings including but not limited to Defendants routinely disregard corporate form and do not deal with the other members of the group with an arm's-length relationship. The Defendants possess, transfer and/or hold funds of, or for the benefit of, one another, and make and receive payments for, and on behalf of, the other Defendants, pooling the resources without regard to corporate separateness, and without entering into an arm's-length negotiated contracts to provide such services.

**Fraudulent Avoidance of Creditors**

44. Newlead Holdings has set up this network of subsidiary entities to avoid paying debts owed by it or its subsidiaries. Newlead Holdings has set up a network of alter ego entities and successor-in-interest entities to avoid liability, and has dissipated assets away from the very entities that were contractually indebted to Plaintiff and other creditors.

45. Newlead Shipping, Newlead Bulkers, Newlead Castellano Limited, Grand Venetico Inc. and Newlead Venetico Ltd. are or were subsidiaries of Newlead Holdings. Upon information and belief, none of these entities were or are adequately capitalized, for the express purpose of fraudulently avoiding payment to creditors.

46. Defendants further utilize the many subsidiaries and shell companies of Newlead Holdings to divert assets of each individual company to avoid attachment of assets. As a result of Newlead's practice of fraudulently diverting payments and contracts to its subsidiaries, Grand Venetico Inc. and Newlead Shipping were severely undercapitalized relative to their obligations to DHL and other creditors.

47. Upon information and belief, the Newlead entities regularly move cash and other assets between Newlead Holdings and its subsidiaries in order to satisfy the listing requirement with NASDAQ through artificially inflating share prices for Newlead Holdings and to avoid creditors. The Defendants intentionally "blurred the lines" between the various companies in order to perpetrate the fraud. In addition, the Newlead companies have fraudulently induced their counterparties into entering into contracts which Newlead has admitted that it either never performed, or were complete forgeries, at the direction of the Newlead CEO Michael Zolotas. *See Transasia Commodities Investment Limited v. Newlead JMEG, LLC, et al.*, N.Y. Sup., Index No. 654414/2013.

48. In late 2013 and early 2014, the Financial Industry Regulatory Authority ("FINRA") conducted an investigation of Newlead Holdings.

49. In June 2014, NASDAQ informed Newlead Holdings that it was being delisted pursuant to NASDAQ's discretionary authority under Listing Rule 5101. The letter stated that NASDAQ's determination was "based on public interest concerns raised by, among other things, [Newlead Holdings'] repeated misstatements and omissions of important facts in public disclosures over the past 18 months, to the detriment of current and prospective investors."

50. Faced with several litigations asserting fraud and alter ego against Newlead Holdings, its subsidiaries, and corporate officers, Newlead continues its fraudulent conduct and to frustrate recovery by its creditors.

51. For example, Jan Berkowitz, former Vice President and COO of Newlead Holdings, in October 2015 filed for personal bankruptcy in the Western District of North Carolina just two days before a scheduled deposition in connection with alleged fraudulent activity on behalf of Newlead Holdings. *See* N.Y. Sup., Index No. 654414/2013, *supra.*

52. Additionally, Zolotas, CEO of Newlead Holdings has refused to produce over 1,500 relevant emails to the New York Supreme Court. Judge Charles E Ramos recently ordered that Zolotas' hard drive be turned over to forensic experts, noting that "Newlead is playing a game with the Court." *Id.*

**A. Fraud in Connection with Newlead Venetico**

53. As set forth above, the vessel M/V Newlead Venetico was time chartered by DHL pursuant to a charter party with Newlead Shipping. During October 2011, the registered owner of the Newlead Venetico was Grand Venetico Inc. Grand Venetico Inc. was incorporated in the Marshall Islands on August 30, 2006 for the sole purpose of owning the Newlead Venetico.

54. On May 8, 2012, the Newlead Venetico (IMO No. 8521189) was sold at the instruction of Zolotas, Newlead Holdings, Newlead Shipping and Newlead Bulkers.

55. A Newlead entity sold the vessel to another entity, Great Ally Holdings Ltd., who in turn sold the vessel for scrap. Upon information and belief, the vessel was first sold to a another entity to conceal the identity of the company selling the vessel to the scrapyard, and possibly to conceal the true sale price. Grand Venetico Inc.'s corporate registration with the Marshall Islands was annulled in January 2014, at a time when Michael Zolotas should have known that Newlead

Shipping, Newlead Bulkers, Grand Venetico Inc. and the vessel Newlead Venetico would be liable to DHL.

56. According to Newlead Holdings' public filings the Newlead Venetico was sold for approximately $10 million. Upon information and belief the sale proceeds were not used to exclusively pay down any purchase loan that had been used to buy the Newlead Venetico, but debts related to the funding of Newlead Holdings, Newlead Shipping, Newlead Bulkers and other related entities.

57. Newlead Holdings, Newlead Shipping, Newlead Bulkers and Grand Venetico Inc. failed to set aside or put in escrow these sale proceeds as security for DHL's claims in connection with the charter party. There is also no evidence that Newlead Holdings disclosed DHL's claim in its public filings.

58. Newlead Shipping, Newlead Bulkers and Newlead Holdings were the recipients of the funds which were made from the sale of the Newlead Venetico, thus benefitting from the sale and dissipation of Grand Venetico Inc.'s sole asset.

59. Shortly thereafter, a newly purchased successor vessel was obtained by Newlead Holdings in May 2014, named Newlead Venetico (IMO No. 9640413), and a successor single-purpose entity, Newlead Venetico Ltd. was incorporated in 2014.

60. According to Newlead Holdings' public filings, the successor Newlead Venetico was purchased for $18.5 million. Newlead Holdings paid 25% of the purchase price, or $4.6 million, and then entered into a sale and leaseback arrangement with purported third-party Handymar AS. Total consideration for the sale and leaseback was $13.9 million, with a bareboat charter period of 5 years. At the end of the 5 year term, Newlead Holdings has the option to buy

the vessel back for approximately $13.5 million, despite having paid five years' worth of charter hire.

61. Newlead Venetico Ltd. subcharters the successor Newlead Venetico vessel in the spot market. Funds from the chartering and operation of the successor Newlead Venetico are distributed to and used by alter ego defendants Newlead Holdings, Newlead Shipping and Newlead Venetico Inc.

62. The highly suspicious and unorthodox transactions demonstrate that the funds from the sale of the vessel Newlead Venetico were diverted to Newlead Holdings and its subsidiaries to avoid payment to creditors like DHL arising from breach of contract relating to the Newlead Venetico, and re-used for the purchase of the successor Newlead Venetico vessel.

63. Upon information and belief, some or all of these funds were used to purchase the successor Newlead Venetico and its sister vessel the M/V Newlead Castellano (each built in 2012 and 2013, respectively, and delivered in 2014). The timing of both deliveries leaves little doubt that the proceeds of the sale of the original Newlead Venetico were funneled through the Newlead organization and used directly or indirectly to make the purchases.

64. Additionally, the combined capacity of the vessels (approximately 35,500 deadweight tonnage) almost exactly replace the tonnage capacity lost by the sale of the Newlead Venetico (approximately 73,000 dwt), thus allowing the Newlead entities to continue their business through this successor fleet.

65. Accordingly, Newlead Castellano Ltd. and Newlead Venetico Ltd. are successors-in-interest to the now-annulled Grand Venetico Inc., and as such are liable for its debts and for posting security to cover DHL's maritime claim against Defendants.

**B. Fraud in Connection with Newlead Castellano**



#46342776_v1

66. As set forth above, the Vessel was directly or indirectly purchased and obtained with funds received by Newlead Shipping and/or Newlead Holdings from the sale of the Newlead Venetico.

67. The Vessel was then used by Newlead Holdings, through Newlead Castellano Ltd., as security for Newlead Holdings and its coal-subsidiaries' non-maritime debts in connection with fraudulent coal contracts.

68. The use of Newlead Castellano Ltd.'s sole asset to secure the debts further demonstrates the undercapitalization of the Newlead subsidiaries, as well as the domination of control of Newlead Castellano Ltd. by Zolotas and Newlead Holdings to perpetrate fraud.

69. Accordingly, Newlead Castellano Ltd. is an alter ego of Newlead Holdings, Newlead Shipping, Newlead Bulkers and the other Newlead subsidiaries, as well as a successor-in-interest to Grand Venetico Inc. to the extent that the Vessel was purchased and obtained with funds received from the sale of the Newlead Venetico.

**RULE B ATTACHMENT**

70. DHL repeats and realleges the foregoing paragraphs as if fully set-forth herein.

71. The underlying dispute arising from the charter party is based on an indemnity claim for an arbitration award which may be issued against DHL in Hong Kong arbitration. Thereafter, DHL will pursue recovery against Newlead Shipping and/or Grand Venetico Inc. in London. Plaintiff brings this action solely to obtain *quasi in rem* jurisdiction over Defendants and security for its claims.

72. Upon information and belief, Defendants cannot be found within this District within the meaning of Rule B (see accompanying Declaration).

73. However, Defendants' property can be found within this District, the M/V Newlead Castellano which is currently under arrest/attached in another action pending in this District.

74. The total amount to be restrained and attached as security for DHL's claim is $14,303,762.90.

75. Plaintiff expressly reserves all rights to have the merits of the underlying dispute arising from the charter party to be resolved by way of arbitration.

WHEREFORE, Plaintiff DHL Project & Chartering Limited prays as follows:

1. That an order of maritime attachment and garnishment may issue against the Defendants in accordance with Supplemental Admiralty Rule B; and if Defendants cannot be found, that their goods, chattels and credits within the district, and particularly the vessel M/V Newlead Castellano may be attached in an amount sufficient to answer DHL's claim;

2. That Defendants, and any other person claiming an interest therein may be cited to appear and answer the matters aforesaid;

3. That judgment be entered in favor of DHL Project & Chartering Limited against Defendants in the amount of $14,303,762.90; and,

4. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

5. That this Court grant DHL Project & Chartering Limited such other and further relief which it may deem just and proper.

Dated: May 25, 2016

BRENNAN WASDEN & PAINTER LLC

By: ______________________________
William E. Dillard
State Bar No. 222030
Travis D. Windsor
State Bar No. 770441
P.O. Box 8047
Savannah, Georgia 31412
(912) 232-6700
FAX (912) 232-0799
bdillard@brennanwasden.com
twindsor@brennanwasden.com

*Attorneys for Plaintiff DHL Project & Chartering Limited*

HOLLAND & KNIGHT LLP

By: /s/ James H Power
James H. Power (*pro hac vice* forthcoming)
31 West 52nd Street
New York, New York 10019
Telephone: 212-513-3200
Telefax: 212-385-9010
Email: james.power@hklaw.com

*Attorneys for Plaintiff DHL Project & Chartering Limited*



#46342776_v1

# VERIFICATION

STATE OF GEORGIA )
:ss.:
COUNTY OF CHATHAM )

**William E. Dillard**, being duly sworn, deposes and says:

I am an attorney with the firm of Brennan Wasden & Painter, LLC, counsel for DHL Project & Chartering Limited ("DHL"), plaintiff in the foregoing action. I have read the foregoing Verified Complaint and know the contents thereof and the allegations therein, and the same are true and correct to the best of my knowledge and belief. I have reviewed documentation provided to me by DHL and my firm has corresponded with DHL's representatives regarding this matter, and have researched several public filings and exhibits thereto. I am authorized by DHL to make this verification, and the reason for my making it as opposed to an officer or director of DHL is that there are none within the jurisdiction of this Honorable Court.

William E. Dillard
State Bar No. 222030

Sworn to before me this
25th Day of May, 2016

Notary Public

RHONDA BRADLEY NOTARY PUBLIC Comm. Exp. 3/16/20 LIBERTY COUNTY, GA



#46342776_v1