## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION
## IN ADMIRALTY

| | | |
|---|---|---|
| **DHL PROJECT & CHARTERING LIMITED,** | § § § | |
| **PLAINTIFF** | § § | |
| **VS.** | § § § | **CIVIL ACTION NO:** |
| **NEWLEAD HOLDINGS, LTD; NEWLEAD SHIPPING, S.A.; NEWLEAD BULKERS, S.A.; NEWLEAD CASTELLANO, LTD; GRAND VENETICO, INC.; AND NEWLEAD VENETICO, LTD.** | § § § § § § | **4:16-CV-00123-JRH-GRS** |
| **DEFENDANTS** | § § § § | |

## MOTION TO VACATE ATTACHMENT

Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd. and Labroy Shiptrade Limited ("Interested Parties"), plaintiffs in the action docketed at 4:16-cv-093 (the "Ray Action"), through undersigned counsel, hereby move to vacate the attachment purportedly obtained by DHL Project & Chartering Limited ("DHL") in the instant action (the "DHL Action"), and respectfully plead as follows:

## INTRODUCTION

DHL has tried to consolidate this action with the Ray Action and to intervene in the Ray Action, but has been rebuffed both times because DHL does not meet the applicable standards. DHL does not accept the Court's rulings and has recently filed a notice of interlocutory appeal

and sought a stay of the Ray Action to allow DHL to appeal the Court's supposedly erroneous ruling denying intervention (Dkt. 98 in the Ray Action). While the Interested Parties prefer to focus resources elsewhere, DHL's intransigence in demanding intervention requires a response. Fortunately, DHL's purported attachment, upon which it bases its standing to intervene and to appeal the denial of DHL's demand to intervene, is subject to vacatur because DHL alleges only a speculative contingent indemnity claim and because DHL has consistently ignored and deliberately circumvented the applicable local and federal rules. DHL's claims and appeal become moot if the attachment in this action is vacated, which would deprive DHL of standing to continue advancing its patently spurious claims, and the Interested Parties respectfully request such relief here.

## **FACTS**

The Court is by now familiar with the underlying facts and DHL's repeated efforts to insert itself into the Ray Action, and so only a brief recitation is necessary. The Interested Parties filed a Complaint in the Ray Action pursuant to F.R.Civ.P. Rules B and C on April 19, 2016 and attached and arrested M/V NEWLEAD CASTELLANO (the "Vessel") the same day. Ray Action Docket 1-12. DHL filed a verified complaint on May 25, 2016 (the "DHL Complaint") alleging (1) breach of maritime contract; and (2) an alter ego relationship between NewLead Holdings Ltd., NewLead Shipping S.A., NewLead Bulkers S.A., NewLead Castellano Ltd., Grand Venetico Inc., and NewLead Venetico Ltd. (the "DHL Defendants"). DHL Docket 1. Relying on the allegations of the DHL Complaint, DHL prepared and presented an order of attachment to the Court (the "Attachment Order"). DHL Docket 2.

2

The DHL Complaint alleges that DHL had a charter with NewLead Shipping S.A. and Grand Venetico Inc. for the vessel M/V NEWLEAD VENETICO.  DHL Docket 1, Complaint ¶ 14.  M/V NEWLEAD VENETICO allegedly developed a crack in her hull, and performance of the charter was delayed.  Id. ¶¶ 16 & 18.  DHL alleges a breach of charter claim against NewLead Shipping S.A., NewLead Bulkers S.A., and Grand Venetico Inc., but does not allege that DHL was ever in privity with NewLead Castellano, Ltd. or that DHL has a lien against the Vessel.[1]  See Id.  Instead, DHL alleges an alter ego relationship between all of the DHL Defendants.  DHL Complaint ¶¶ 34-52.  This, DHL implies, allows DHL to allege a claim against NewLead Castellano, Ltd., and hence against that entity's asset, the Vessel.  Id. ¶ 65.  This convoluted set of alleged facts obfuscates the fact that DHL has never been in contract with NewLead Castellano, Ltd., and does not have or allege a lien over the Vessel.

The DHL Complaint seeks to attach assets belonging to the DHL Defendants to secure a prospective indemnity claim that DHL **might** have if it is found liable to a non-party in an unrelated Hong Kong arbitration.  DHL Complaint ¶ 20.  As DHL recently conceded, "the Hong Kong arbitration proceeding between DHL and its subcharterer will determine whether the cracking in the hull of the chartered vessel was a breach of contract for failure to maintain a seaworthy vessel."  DHL Emergency Motion for Stay, Ray Action Docket 99, p. 10.  In any event, the DHL Complaint sought an order of attachment under F.R.Civ.P. Rule B, but does not allege a lien over the Vessel.  DHL Complaint *ad damnum* ¶ 1.

Defendants in the Ray Action moved to vacate the arrest and attachment of the Vessel on May 3, 2016.  Ray Action Docket 15.  By order dated July 14, 2016, the Court granted the Motion

---

[1]    Notably, the alleged breach of charter occurred in early 2012 (DHL Complaint ¶ 16) while M/V NEWLEAD CASTELLANO was built in 2013.  It is difficult to see how DHL could have a breach of contract claim against the owner of a ship that did not exist when the alleged breach of contract claim accrued.

to Vacate with respect to the Rule C arrest, but denied vacatur of the Rule B attachment. Ray Action Docket 47. Plaintiffs moved for emergency reconsideration (Ray Action Docket 49), and the Court set a briefing schedule in which the final briefs were due August 1, 2016. Ray Action Docket 55. In the meantime, on July 28, 2016, DHL moved the Court to consolidate the DHL Action with the instant matter. Ray Action Docket 60. By subsequent order dated August 5, 2015, the Court reinstated the Rule C arrest of the Vessel (the "Amended Order"). Ray Action Docket 64.

DHL filed the DHL Complaint on May 25, 2016, but did not promptly serve any of the Defendants in the DHL Action. See DHL Action Docket. Instead, DHL purports to have served the substitute custodian via email shortly before the close of business on Friday, August 5, 2016. Affidavit of Service by DHL, DHL Docket 14. As the Court is aware, the Vessel was auctioned Monday, August 8, 2016 at 10:00 A.M., E.S.T. Ray Action Docket 66.

By motion dated July 28, 2016, DHL moved to consolidate this action with the Ray Action. DHL Docket 11. By order dated August 25, 2016, the Court denied DHL's Motion to Intervene. DHL Docket 13. A couple of hours after this order issued, DHL wired approximately $84,000 to the substitute custodian in the Ray Action. See DHL Docket 14, ¶ 6. By motion dated September 8, 2016, DHL then moved to intervene in the Ray Action. Ray Action Docket 80. DHL's Motion to Intervene was denied by the Court pursuant to an order dated October 5, 2016. Ray Action Docket 94. DHL has subsequently filed a Notice of Interlocutory Appeal and an Emergency Motion to Stay, which remains pending. Ray Action Docket 98-100.

## ARGUMENT

### 1. DHL Must Show Cause Why the Purported "Attachment" Should Not Be Vacated

The Attachment Order obtained by DHL provides that:

> [A]ny person claiming an interest in the property attached or garnished pursuant thereto may, upon a showing of any improper practice or a manifest want of equity on the part of Plaintiff, be entitled to an order requiring Plaintiff to show cause forthwith why the attachment should not be vacated. . .

DHL Docket 2. [2]

Since DHL filed the DHL Complaint, it has repeatedly engaged in improper practice and inequitable behavior, such that DHL should have to appear and show cause why the purported "attachment" should not be vacated.

DHL will not be able to show cause why the purported "attachment" should not be vacated. DHL's burden is to show that it has a *prima facie* admiralty claim. *See*, Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006), overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009). "A rule E(4)(f) hearing is not intended to definitely resolve the dispute between the parties, but only to make a preliminary determination of whether there are reasonable grounds for issuance of the arrest warrant." North of England Protection and Indem. Ass'n v. M/V Nara, 1999 WL 33116416, at *2 (E.D.La. 1999). The Plaintiff's burden has been described as requiring that a *prima facie* claim be established. *See*, e.g., Chiquita Int'l Ltd. v. MV Bosse, 518 F.Supp.2d 589, 597 (S.D.N.Y. 2007).

The Aqua Stoli Court interpreted Rule B to permit a plaintiff to obtain an order of attachment if it can make a prima facie showing that (1) it has a valid *prima facie* admiralty claim

---

[2] Because Interested Parties in the Ray Action have demonstrated an interest in the Vessel in that proceeding, they have standing to challenge DHL's purported attachment in this case pursuant to the above quoted language.

against the defendant; (2) the defendant cannot be found within the district; (3) the defendant's property may be found within the district; and (4) there is no statutory and maritime law bar to the attachment. 460 F.3d at 455.

In this case, the attachment obtained by DHL should be vacated because (1) DHL does not allege a valid *prima facie* admiralty claim; and (2) there are statutory or maritime law bars to the attachment.

### 2.  DHL Has Engaged in Procedurally and Equitably Improper Behavior

There is no question that DHL has engaged in procedurally and equitably improper behavior that both requires DHL to show cause why its purported attachment should not be vacated and which independently supports vacatur.  The Interested Parties review DHL's actions in greater detail below, but DHL's intentional filing of an original complaint instead of intervening, as required by the local rules, combined with DHL's failure to promptly serve its papers, post required security and undertakings with the U.S. Marshal, and purported service of the *in personam* DHL Defendants by emailing process to the substitute custodian are all procedurally improper.

Equitably, DHL has also behaved with wanton disregard.  The DHL Complaint presents DHL's attachment request – sought to secure a speculative, unripe indemnity claim – as a perfectly allowable request in line with precedent in other districts.  A cursory examination of the sole case cited by DHL, Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd., 485 F.Supp.2d 399 (S.D.N.Y. 2007), reveals that this case is expressly factually distinguished from the long line of cases finding that speculative indemnity claims cannot be secured under Rule B. In Navalmar, the party seeking to attach had been required to place security in the underlying

proceeding and sought security from its potential indemnitee.  The <u>Navalmar</u> Court specifically distinguished these facts from the long line of cases finding that an entirely contingent claim provides no basis for an attachment. Put another way, the DHL Complaint misleads the Court by citing the distinguishable exception to the rule as the applicable rule. DHL does so for the sole purpose of making its claim appear viable, when in fact it is not.

In light of DHL's procedurally and equitably improper behavior, DHL should appear before this Court and show cause why the purported attachment in this case should not be vacated.

### 3.  <u>The DHL Complaint Should Be Dismissed Because DHL Does Not Allege a Valid <em>Prima Facie</em> Maritime Claim</u>

The DHL Complaint should be dismissed because it does not allege a *prima facie* maritime claim.  Under <u>Aqua Stoli</u>, DHL must show that it has a valid *prima facie* admiralty claim against the defendant. 460 F.3d at 455.  Here, DHL alleges only a speculative indemnity claim, and hence, the DHL Attachment should be vacated.

The DHL Complaint was filed to secure DHL's "contingent liability claim against Newlead Shipping, Newlead Bulkers and Grand Venetico Inc. for breach of charter party."  DHL Complaint ¶ 21.  However, in the Eleventh Circuit, and others, Rule B attachment is not available to obtain security for prospective indemnity claims: an indemnity claim is not ripe until the party claiming indemnity either is ordered to pay another entity or actually pays damages.  <u>Armstrong v. Alabama Power Co.</u>, 667 F.2d 1385, 1388-89 (11th Cir. 1982) (Upholding dismissal of contingent maritime indemnity claim as premature) citing <u>A/S Ludwig Mowinckles Rederi v. Tidewater Construction Corp.</u>, 559 F.2d 928 (4th Cir. 1977) (Dismissing indemnity claim where "neither a determination of liability nor a settlement in any of the" underlying matters had been made); See also <u>CPM Corp. Ltd. v. Prominent Shipping PTE Ltd.</u>, 2009 WL 3787380 (S.D.N.Y.

2009) (Vacating Rule B attachment securing unripe contingent claim for failure to state *prima facie* maritime claim); <u>Beluga Chartering GMBH v. Korea Logistics Sys. Inc.</u>, 589 F. Supp.2d 325, 330 (S.D.N.Y. 1998) (Dismissing Rule B claim for failure to allege *prima facie* maritime claim where Plaintiff had made no payments or initiated action against defendant); <u>Sanko Steamship Co., Ltd. v. China Nat'l Chartering Corp.</u>, 536 F. Supp.2d 362, 366-67 (S.D.N.Y. 2008) (Noting "precedent in both this District and elsewhere that an indemnity claim is not ripe until the underlying claim has been paid"); <u>J.K. Int'l, Pty., Ltd. v. Aqriko S.A.S.</u>, 2007 WL 485435, at *4-5 (S.D.N.Y. 2007) (Vacating attachment based on charterers' unripe indemnity claims against cargo receivers in absence of evidence that the ship owner intended to press a demurrage claim against charterer); <u>Bottiglieri Di Na Vigaizione Spa v. Tradeline LLC</u>, 472 F. Supp.2d 588, 591 (S.D.N.Y. 2007) (Vacating attachment based on unripe indemnity claims that included potential liability, fees, and costs of ongoing arbitrations); <u>Eitzen Sealift A/S v. Cementos Andinos Dominicanos</u>, SA, 2005 WL 2218025, at * 2 (S.D.N.Y. 2005) (Holding that indemnity claim based on costs and fees associated with an arbitration that had not yet been initiated was too speculative to support attachment).

The DHL Complaint cites <u>Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, Ltd.</u>, 485 F.Supp.2d 399 (S.D.N.Y. 2007), misleadingly advising the Court that "[w]here the underlying liability proceeding has been commenced, court [sic] have found that a contingent indemnity claim is ripe for adjudication, and security may be obtained for that claim pursuant to Supplemental Admiralty Rule B." DHL Action Docket 1, fn 2. However, DHL does not advise the Court that <u>Navalmar</u> involved an underlying proceeding between the parties to the attachment in which the party seeking indemnity had been required to file a million dollar bank guarantee in the underlying proceeding. <u>Navalmar</u> at 404. It was on this basis that the Court in that case

upheld the attachment and expressly distinguished the holding from the controlling authorities cited by the Interested Parties above.  <u>Id.</u>

DHL, aware that this is a fatal flaw in its case, now claims that it recently initiated arbitration against Grand Venetico Inc. and Newlead Shipping SA. Declaration of James H. Power dated October 1, 2016, ¶ 4, Ex. 1.  This purported "Notice of Arbitration" is a sham, filed for the sole purpose of creating the appearance that DHL in fact has a claim against the NewLead Defendants when it is patently clear DHL does not.  Obviously, if there has not been a finding of underlying liability, and there might never be, DHL does not have an indemnity or other claim against any NewLead entity.  Instead, as DHL tacitly admits, it is hoping to get a default judgment in the purported arbitration.  DHL Emergency Motion to Stay, Ray Action Docket 99, p. 10.  This is simply an example of DHL creating facts to try to overcome one of the many deficiencies of its case, and is further evidence of DHL's procedurally improper practices and inequitable conduct. DHL's transparent attempt to game the Court by filing a premature arbitration demand and hoping for a default ruling should be roundly condemned.

Accordingly, DHL's legal authorities provide no guidance and its claims are instead governed by the well-established precedent that requires that the Rule B attachment be vacated for failure to allege a *prima facie* maritime claim because DHL alleges no underlying payments or (real) action against any of the DHL Defendants.  Since DHL has failed to allege a *prima facie* maritime claim, the purported attachment should be vacated and the DHL Complaint dismissed.

### 4.  <u>DHL's Attachment Should Be Vacated Because There Are Statutory and Maritime Law Bars to the Attachment</u>

The DHL Attachment should be vacated because there are numerous statutory and maritime law bars to the purported attachment.  Under <u>Aqua Stoli</u>, DHL must make a *prima facie*

showing that there are no statutory or maritime law bars to the attachment. 460 F.3d at 455.  DHL

cannot do so because it has intentionally failed to comply with the applicable local rules and

Federal Rules of Civil Procedure.  DHL has (i) failed to promptly serve its papers, (ii) failed to

post the required stipulation for costs, (iii) ignored the local rule requirement that it intervene

instead of filing an original complaint, (iv) failed to post additional security with the Marshal, and

(v) purported to effect service on the Vessel in direct contravention of the express requirements of

Rule B.  All of these failures were the result of deliberate decisions by DHL to "play cute" with

the rules and procedures so that DHL could appear at the last minute and raise spurious objections

and arguments, all in an effort to position itself as a barrier to recovery in the Ray Action.

Failure to follow the local rules (let alone the Federal Rules of Civil Procedure) is grounds

to vacate the attachment and dismiss the DHL Complaint.  Goforth v. Owens, 766 F.2d 1533,

1535 (11th Cir. 1985); See also Gyasi v. M/V ANDRE, 2004 WL 906761 (S.D.Fl. 2004)

(dismissing intervenor's complaint for failure to comply with local admiralty rules and

F.R.Civ.P.).  Pursuant to F.R.Civ.P. 83(a)(1), the District Court for the Southern District of

Georgia "may adopt and amend rules governing its practice."  The Court has done so, adopting

local rules for civil actions (the "Local Civil Rules") and for admiralty actions (the "Local

Admiralty Rules").

*(i)*   *DHL Failed to Promptly Serve the DHL Complaint and Attachments*

The Local Civil Rules provide:

> **LR 4.3 Service of Process**. It shall be the responsibility of the plaintiff or
> plaintiff's attorney to effectuate prompt service of the summons and a copy
> of the complaint. . . .

DHL did not promptly serve the DHL Complaint or Rule B process.  DHL obtained a writ of

attachment on May 25, 2016, but did not purport to serve it or the DHL Complaint until more than

10

ten (10) weeks had passed.  DHL Action Docket; Quartaro Dec. ¶ 10, Ex. 1.  During this entire time, the Vessel was in the custody of the Court in this District and was easily accessible as she lay off Tybee Island.  The reason DHL did not advance its alleged claim during this time is obvious:  DHL wanted to avoid paying its equitable share of the approximately $700,000 of *in custodia legis* expenses incurred by Interested Parties in maintaining the Vessel while she was under arrest.  Accordingly, the DHL Complaint should be dismissed and the attachment vacated because DHL ignored the requirement that it promptly serve these papers.

    *(ii)*    <u>*DHL Did Not Stipulate to Costs*</u>

When a party seeks a remedy listed in F.R.Civ.P. A, the Local Admiralty Rules require that no pleading seeking such remedy shall be filed without a stipulation for costs:

**LAdR 5. Costs and Security, Stipulations for**.

> (a) In actions where there is sought, in whole or in part, a remedy listed in Supplemental Rule A of the Supplemental Rules For Certain Admiralty and Maritime Claims, Federal Rules of Civil Procedure, no initial pleading seeking such remedy, or claim pursuant to Supplemental Rule F(5), shall be filed unless the party offering the same shall first file a stipulation for costs in the sum of $250.00.

F.R.Civ.P. Rule A states in relevant part:

> (1) These Supplemental Rules apply to:

> > (A) the procedure in admiralty and maritime claims within the meaning of Rule 9(h) with respect to the following remedies:

> > > (i) maritime attachment and garnishment. . .

The DHL Complaint sought the attachment of assets pursuant to Rule B, which is titled "In Personam Actions: Attachment and Garnishment."  DHL Action Docket 1, ¶ 2.  However, DHL did not post a stipulation for costs.  See DHL Action Docket.   Accordingly, DHL has filed a pleading seeking a remedy pursuant to Rule A, but has not stipulated to costs.  The filing of the

DHL Complaint was thus procedurally improper and any attachment thereby obtained is invalid and should be vacated.

> ### (iii)    *DHL Ignored the Local Admiralty Rule Governing Intervention*

Even if DHL had complied with the foregoing Local Civil and Admiralty Rules, DHL apparently made a strategic decision to ignore the Local Admiralty Rules concerning intervening claims in admiralty cases. The Local Admiralty Rules[3] lay out the specific requirements for a party wishing to allege a claim in an existing seizure, arrest or attachment:

**LAdR 9. Intervention**.

> (a) Whenever a vessel or other property is seized, attached or arrested in a proceeding and said property is in the hands of the Marshal, **anyone having a claim against the vessel or property is required to present the same by intervening complaint filed in the case and not by way of original complaint**, unless otherwise ordered by the Court. Upon the filing of each such intervening complaint, the Clerk (or, counsel who files same) shall forthwith deliver a conformed copy thereof to the Marshal who shall thereupon post such copy on the vessel property, but the Marshal need not re-arrest or re-attach the vessel or property. Counsel for intervening parties are required to ascertain the names and addresses of other counsel of record in the proceedings at the time of the filing of an intervening complaint and forthwith to serve a copy of the intervening complaint, including any exhibits attached to the original thereof, upon such other counsel and shall thereafter file a certificate with the Clerk setting forth the names and addresses of counsel served, method of service, and the date thereof.

(emphasis added).

The Interested Parties arrested the Vessel on April 19, 2016 (Ray Action Docket 12). Ignoring the Local Rule mandate, DHL filed an original complaint on May 25, 2016. DHL Action Docket

---

[3]    Every District Court in the Eleventh Circuit that touches the sea has adopted a local admiralty rule requiring third-party post-arrest claims to be brought by intervening complaint and not by way of original complaint. See Northern District of Florida Local Admiralty Rule E(2)(a); Middle District of Florida Local Admiralty Rule 7.05(b)(1); Southern District of Florida Local Admiralty Rule E(2)(a); and Southern District of Alabama Local Admiralty Rule 104 Rule E(k). The Southern District of New York has the same rule at Local Admiralty Rule E.2.

1.  Since DHL did not comply with Local Admiralty Rule 9, the DHL Complaint was not delivered to the Marshal.   See DHL Action Docket.   This allowed DHL to file papers (improperly) months in advance, but to delay service on the Vessel until a few business hours before the Court-ordered auction.  Id.  Ignoring Local Admiralty Rule 9 also meant that DHL did not serve the DHL Complaint on counsel of record or have the U.S. Marshal post a copy of the attachment on the Vessel, as required by the rule.  Id.

DHL's failure to intervene, or even timely serve its improper original complaint, until late in the afternoon on the business day before the auction means that DHL also avoided the Local Admiralty Rule requirement that no party may intervene except on order of the Court if such intervention is sought within the fifteen days prior to the auction date.   Local Admiralty Rule 9(b), partially cited above, goes on to provide:

> . . . no party is permitted to intervene in any such proceedings without first obtaining leave of Court if intervention is sought within fifteen days prior to the date for which a sale of the vessel or property has been set by the Court.
>
> If intervention is sought within said fifteen-day period by any party, that party is required to file a motion or petition to intervene and to serve copies thereof along with any exhibits or documents relied upon in support of such intervenors' claims and request for intervention, upon all counsel of record. In such circumstances the Court may allow intervention upon such terms and conditions which is considered equitable to the interests of all parties involved.

Had DHL intervened during the fifteen-day period preceding the auction, it would have been required to first obtain a Court order, and, if it allowed such intervention, the Court might have crafted an equitable process.  Instead, DHL simply sat on its improperly-filed original complaint and purportedly served it within the fifteen-day period before the auction (however, even this service was ineffective, as the Interested Parties argue below).  Put another way, DHL ignored every procedural requirement of Local Admiralty Rule 9 requiring it to intervene instead of file an

original complaint, thereby avoiding numerous procedural requirements.  Since DHL did not file in accordance with the required local procedure, DHL cannot show there is no maritime law bar to its purported "attachment."

   *(iv) DHL Did Not Provide Additional Security*

   In addition to the foregoing, DHL failed to provide the additional security required by the Marshal.  Local Admiralty Rule 9 further provides:

> (c) Following an initial attachment, arrest, or seizure, all parties except seamen, intervening in a proceeding alleging a claim against the property are **required** to deposit funds for the safekeeping of the property with the Marshal upon the filing of such intervening claim or complaint. Unless the Court otherwise orders for good cause shown the deposit is to be in an amount determined by the Marshal.

(Emphasis added)

The DHL Action Docket is devoid of any evidence that DHL provided the required funds to the Marshal.  See DHL Action Docket.  This is in addition to DHL's failure to stipulate to costs under Local Admiralty Rule 5.

   DHL also ignored the substitute custodian's request that DHL pay its share of anticipated custody costs going forward or execute a custody agreement agreeing to pay these costs until after DHL's motion to consolidate was denied and the Vessel had already been delivered to her buyers. See DHL Docket 14, ¶ 6.  DHL waited until the Court denied consolidation, then subsequently transferred funds to the substitute custodian to undermine the Court's denial of consolidation. Unsurprisingly, DHL then moved to intervene, citing its transfer of funds to the substitute custodian as support.  Ray Action Docket 80, ¶¶ 3 and 8.  DHL has thus taken a procedurally improper tack in this case that, when exposed, only led DHL to "double down" and try to force

the Court to a different decision.  A clearer example of improper practice and manifest want of equity is difficult to conjure.

### (v)DHL's Service on the Vessel Did Not Comply With Rule B

DHL also ignored the express requirement of Rule B and the Federal Rules that the U.S. Marshal serve the attachment papers by preparing an order of attachment that purports to allow DHL to serve the Vessel's substitute custodian in lieu of the Marshal.  This is in direct contravention of Rule B, which states:

> (1) When Available; Complaint, Affidavit, Judicial Authorization, and Process. In an in personam action:
>
>> (d)(i) If the property is a vessel or tangible property on board a vessel, the summons, process, and any supplemental process **must** be delivered to the marshal for service.

(emphasis added).

Furthermore, F.R.Civ.P. 4.1(a), "Serving Other Process," expressly provides:

> In General. Process—other than a summons under Rule 4 or a subpoena under Rule 45—**must be served by a United States marshal or deputy marshal or by a person specially appointed for that purpose**. It may be served anywhere within the territorial limits of the state where the district court is located and, if authorized by a federal statute, beyond those limits. Proof of service must be made under Rule 4(l).

(emphasis added).

The DHL Complaint sought the attachment of the Vessel.  DHL Action Docket 1, ¶ 73.  The DHL Complaint has not been served by the Marshal.  See DHL Action Docket.   Because the language of Rule B is mandatory, not permissive, the order of attachment obtained by DHL (which DHL prepared) is ineffective to the extent it purports to allow service by someone other than the Marshal.  Moreover, F.R.Civ.P. 4.1 requires service of process other than a summons (such as the writ of attachment DHL claims to have served) by a Marshal or specially designated process

server.  There is no evidence that the Vessel was served by a Marshal, and the record is devoid of evidence that a special process server was appointed. Accordingly, the DHL Complaint has not been properly served on any of the DHL Defendants.

DHL, desperate to show that it served the Vessel (the time to do so having now expired) resorts to filing a questionable "affidavit of service" on the Vessel.  DHL Docket 14.  In order to prove service, F.R.Civ.P. 4(l) provides:

> (1) Affidavit Required. Unless service is waived, proof of service must be
> made to the court. Except for service by a United States marshal or
> deputy marshal, proof must be by the server's affidavit.

The "affidavit of service" filed by DHL was executed by DHL's New York counsel.  See DHL Docket 14.  However, DHL's New York counsel does not purport to have served the Vessel himself.  Id.  Instead, DHL takes the curious, and apparently unprecedented, position that New York counsel's email to the substitute custodian was somehow service on the defendants named in the DHL Complaint.  Id. ¶ 3.  There is therefore no affidavit made by the purported server, and accordingly DHL has failed to file a proper affidavit of service.[4]  Since DHL has not brought the Vessel's owner within the jurisdiction of the Court in the DHL Action (though DHL could easily have done so if it followed the rules), there is no underlying attachment and the DHL Complaint should be dismissed and the attachment vacated.

## CONCLUSION

DHL should be required to show cause forthwith why the attachment in the DHL Action should not be vacated.  DHL cannot make such a showing because the DHL Complaint fails to

---

[4]    Unsurprisingly, the substitute custodian did not purport to make service.

allege a *prima facie* maritime claim and because DHL has repeatedly engaged in procedurally improper and inequitable behavior that has self-sabotaged DHL's own case.

Respectfully submitted, this 14th day of October, 2016.

**OUHAN FALLIGANT LLP**

/s/ Todd M. Baiad
TODD M. BAIAD
Georgia Bar No. 031605
LUCAS D. BRADLEY
Georgia Bar No. 672136

*Attorneys for Ray Capital, Inc., Oppenheim Capital Ltd., Cheyenne Holdings, Ltd., and Labroy Shiptrade Limited, Interested Parties*

Bouhan Falligant, LLP
The Armstrong House
447 Bull Street (31401)
Post Office Box 2139
Savannah, Georgia 31402-2139
(912) 232-7000 Telephone
(912) 233-0811 Facsimile

**Of Counsel**
(*Pro Hac Vice*)
Neil A. Quartaro (NQ 9640)
Zachary Farley (ZF 1281)
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com
zfarley@wfw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### SAVANNAH DIVISION
### IN ADMIRALTY

| | | |
|---|---|---|
| DHL PROJECT & CHARTERING LIMITED, | § § § | |
| PLAINTIFF | § § | |
| VS. | § § | **CIVIL ACTION NO:** |
| NEWLEAD HOLDINGS, LTD; NEWLEAD SHIPPING, S.A.; NEWLEAD BULKERS, S.A.; NEWLEAD CASTELLANO, LTD; GRAND VENETICO, INC.; AND NEWLEAD VENETICO, LTD. | § § § § § § § | **4:16-CV-00123-JRH-GRS** |
| DEFENDANTS | § § § § | |

---

## CERTIFICATE OF SERVICE

---

This is to certify that I have on this day served all the parties in this case in accordance with the notice of electronic filing ("NEF") that was generated as a result of electronic filing in this Court.

Respectfully submitted, this 14th day of October, 2016.

BOUHAN FALLIGANT LLP

/s/ Todd M. Baiad
TODD M. BAIAD
Georgia Bar No. 031605
LUCAS D. BRADLEY
Georgia Bar No. 672136

*Attorneys for Ray Capital, Inc., Oppenheim Capital Ltd., Cheyenne Holdings, Ltd., and Labroy Shiptrade Limited, Interested Parties*

18

Bouhan Falligant, LLP
The Armstrong House
447 Bull Street (31401)
Post Office Box 2139
Savannah, Georgia 31402-2139
(912) 232-7000 Telephone
(912) 233-0811 Facsimile


**Of Counsel**
(*Pro Hac Vice*)
Neil A. Quartaro (NQ 9640)
Zachary Farley (ZF 1281)
Watson Farley & Williams LLP
250 West 55th Street
New York, NY 10019
(212) 922-2200
nquartaro@wfw.com
zfarley@wfw.com