UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

|  |  |  |
|---|---|---|
| DHL PROJECT & CHARTERING LIMITED, | ) ) ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| vs. | ) | CIVIL ACTION FILE |
|  | ) | NO. CV416-123 |
| NEWLEAD HOLDINGS LTD., | ) | |
| NEWLEAD SHIPPING S.A., | ) | |
| NEWLEAD BULKERS S.A. | ) | |
| NEWLEAD CASTELLANO LTD., | ) | |
| GRAND VENETICO INC., | ) | |
| NEWLEAD VENETICO LTD., | ) | |
|  | ) | |
| Defendants. | ) | |
|  | ) | |

## DHL PROJECT & CHARTERING LIMITED'S OPPOSITION TO NON-PARTIES' MOTION TO VACATE ATTACHMENT

NOW INTO COURT, through undersigned counsel, comes DHL Project & Chartering Limited ("DHL" or "Plaintiff") to file the following memorandum in opposition to the Motion to Vacate Attachment (Dkt. 16) filed by non-parties Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd. and Labroy Shiptrade Limited (collectively, the "Ray Capital Plaintiffs" or "Non-Party Movants") in this action.

## INTRODUCTION

This Court must deny the Non-Party Movants' motion to vacate.  DHL has plead a valid prima facie admiralty claim against Defendants on the basis of a breach of charter party.  Indeed, DHL is currently engaged in the underlying arbitration with its subcharterer as to the damages amount caused by this breach (in a back-to-back charter party contract arrangement).  DHL has

commenced arbitration in London against Defendants and has sought prejudgment security pursuant to Supplemental Admiralty Rule B here.  This Court reviewed the pleadings and properly determined that DHL was entitled to an attachment order against the Vessel as property of the Defendants.  Further, as set forth below, none of the other factors which weigh in favor of vacatur are applicable here.  The present motion made by a non-party is simply a tactic to attempt to prevent DHL from litigating the priority of its claim with respect to claims that the Non-Party movants have alleged in the separate, related action against the Vessel.

Further, the Non-Party Movants have improperly made the present motion in the above-captioned case without filing for intervention in the action as required by Fed. R. Civ. P. 24.[1]  The Non-Party Movants have made no allegations as to their interest in this case, and the Court has not made any such determination as to their interest or granted permission to become a party to this action.  This Court should accordingly deny the motion, or in the alternative, use its discretion to simply decline to consider the motion.[2]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This dispute arises across two actions filed in this District – the above captioned action as well as the related action styled *Ray Capital Inc., et al. v. M/V Newlead Castellano, et al.*, Case No. 16-cv-93 (S.D. Ga.) (JRH).  In each action, the respective plaintiffs have arrested or attached

---

[1] Plaintiff DHL has made a motion to strike the improper filing of the Non-Party Movants. Dkt. 17.  DHL accordingly requested a clerk's extension of the customary 14 days to oppose the motion to vacate which was opposed by the Non-Party Movants and was accordingly denied.  DHL files this Opposition under protest and reserves all of its rights.

[2] Further, DHL notes that its intervention in the *Ray Capital* action is to be heard by the 11th Circuit Court of Appeals, which, if granted, would allow for cross-motions on the merits of DHL's and the Ray Capital Plaintiffs' claims in a single action, and the motions should be considered together at that time.

Moreover, DHL's position is that the Non-Party Movants do not have a sufficient interest in the Funds to allow them to seek to vacate DHL's attachment.  DHL is entitled to independently challenge the standing of the Non-Party Movants and to conduct full discovery on their claims.  Any preliminary ruling made by this Court in Case No. 16-cv-93 regarding the *prima facie* interest of Ray Capital Plaintiffs to the Funds carries no weight as to the standing of the Non-Party Movants in this case, as DHL was not a party in *Ray Capital* action and did not have the full opportunity to challenge the interest claimed by Ray Capital Plaintiffs.

the vessel M/V Newlead Castellano (the "Vessel") pursuant to Supplemental Admiralty Rules B and C.  Plaintiff DHL asserts a claim for damages arising out of Defendants' breach of a charter party.  The Ray Capital Plaintiffs, in their own action (Civil Action No. 14-cv-93) assert a claim against the Vessel and its owner pursuant to a purported breach of a promissory note and foreign mortgage (neither of which are maritime in nature or give rise to a maritime lien against the Vessel or the substitute *res)*.

As the Court is aware, the *Ray Capital, et al.* case was filed on April 19, 2016, on which date a warrant of arrest and writ of attachment were issued and served on the Vessel.    However, pursuant to an order of this Court dated July 14, 2016, the Rule C arrest was vacated, and briefing was scheduled for Defendants' motion to reconsider on the issue of the Rule B maritime attachment.

On May 25, 2016,[3] Plaintiff DHL filed its Complaint in this case, alleging two causes of action.  The first cause of action is for breach of contract against Defendants Newlead Shipping S.A., Newlead Bulkers S.A., and Grand Venetico Inc. in connection with damages incurred as a result of a crack in the hull of the vessel M/V Newlead Venetico which was on time charter to DHL from one or more Newlead entities.  The breach of a charter party is a maritime claim which is subject to this Court's admiralty jurisdiction.  The second cause of action alleges alter ego of Defendants Newlead Holding Limited, Newlead Shipping S.A., Newlead Bulkers S.A., Newlead Castellano Ltd, Grand Venetico Inc., and Newlead Venetico Ltd.  The allegations more than sufficiently alleged an alter ego relationship between the Newlead defendants and it is without

---

[3] At the time of DHL's Complaint, the motion to vacate the Ray Capital Plaintiffs' arrest and attachment filed by Defendants was pending (16-cv-093, Dkt. 15)

question that the Vessel was the sole asset of Newlead Castellano Ltd, the alter ego of DHL's counterparty.[4]

DHL prayed for the Court to issue an order for a writ of attachment pursuant to Supplemental Admiralty Rule B against the vessel M/V Newlead Castellano (the "Vessel"), which was present within the District to secure the claims of DHL against Newlead.   Upon filing, the case was marked related to the already-pending case, *Ray Capital, Inc., et al. v. M/V Newlead Castellano*, Case No. 16-cv-093 (JRH).  The allegations made by the Ray Capital Plaintiffs were and continue to be without foundation to support a maritime lien or even a maritime claim, thus barring any right of these plaintiffs to assert either Rule B or Rule C claims.[5]

The briefing on the Defendants' motion to vacate the Ray Capital arrest and attachment was continually adjourned, and the hearing on the Motion was not held until July 11, 2016.  During this time, DHL waited to determine whether joining/consolidating/intervening in the Ray Capital action was prudent, given that the action might have been dismissed on the basis of Defendants' arguments that the Ray Capital Plaintiffs do not have any maritime claim against the Vessel based on a mortgage which was simply collateralized by the Vessel but did not involve any purchase-money loan for the purpose of financing the Vessel itself.[6]

---

[4] The mere fact that Newlead Castellano Ltd, without consideration of any kind, allegedly encumbered and secured its sole asset, the Vessel for the alleged debts of other Newlead-related entities to Ray Capital demonstrates the extreme lack of adherence to corporate form practiced by the Newlead Group companies.  Moreover, it is uncontroverted that sale of the M/V Newlead Ventico was done to avoid judgment and the proceeds from the sale of the M/V Newlead Ventico were used by Newlead to purchase the Vessel.

[5] This Court properly vacated the Rule C attachment on July 14, 2016 but later reversed itself reserving final opinion on the issue of whether there was a breach of the underlying debt obligations by Newlead sufficient to support the action against the vessel Newlead Castellano.  DHL submits that the allegations and exhibits submitted by Ray Capital et al. do not support a finding that there were any breaches in the underlying obligations by Newlead that would have authorized Ray Capital to have brought a claim to foreclose the alleged Liberian mortgage.  A careful review of the filings by the Ray Capital Plaintiffs in Case No. 16-cv-93 (S.D. Ga.) reveals that there were insufficient allegations to support the claims brought by the Ray Capital Plaintiffs.

[6] From the date of DHL's complaint through the period of the Vessel's sale, counsel for DHL was in periodic communication with counsel for Ray Capital regarding all aspects of both cases and counsel for Ray Capital knew

Once the Ray Capital Plaintiffs' Rule C arrest of the Vessel was vacated on July 14, 2016, a flurry of motions and cross-motions for reconsideration were filed with respect to the arrest and attachment claims.  16-cv-93, Dkts. 49, 59, 62, 63.  However, once the sale of the Vessel was ordered to take place in early August, DHL sought, on July 28, 2016, to consolidate the actions in order to preserve its rights in relation to the Vessel and so that the priority of claims to the attached substitute *res* could be determined as between DHL and the Ray Capital Plaintiffs.  Dkt. 11.  This Court denied DHL's motion to consolidate on the basis that the cases did not concern common questions of law or fact.  Dkt. 13.

Immediately after the Rule C arrest of the Vessel was reinstated by this Court on August 4, 2016 (16-cv-93, Dkt. 64), DHL served its writ of attachment on the substitute custodian of the Vessel the next day, on August 5, 2016 (16-cv-93, Dkt. 74-1, Ex. 1).  On August 8, 2016 (subsequent to DHL's attachment of the Vessel) the Vessel was sold and funds in the amount of $7.4 million (reflecting the substitute *res*) were deposited into this Court's registry where they remain subject to the attachment of DHL (with the exception of disbursement of *custodia legis* fees approved by the Court) (the "Funds").  16-cv-93, Dkt. 73.

On September 8, 2016, DHL filed a motion to intervene in the Ray Capital action, seeking to participate in summary judgment briefing concerning the validity of the Ray Capital Plaintiffs' claims.  16-cv-93, Dkt. 80.  DHL filed the motion to intervene in order to become a party to the *Ray Capital* action, and therefore to have a right to file substantive, dispositive briefing on Ray Capital's claims, which directly affect DHL's interest against the substitute *res*, which is secured by its attachment of the Vessel (and later, of the funds substituting the Vessel).

---

full well that DHL would be attaching the Vessel prior to its sale but had intended to wait for the Court to rule on Ray Capital's motion for reconsideration.

On October 4, 2016 the Court denied the intervention of DHL in the Ray Capital action on the basis that an interest in the funds based on DHL's breach of charter party claim is not a protectable interest pursuant to Fed. R. Civ. P. 24. 16-cv-93, Dkt. 94. DHL has filed an interlocutory appeal to the Eleventh Circuit on this issue (16-cv-93, Dkt. 98) and has sought a stay pending appeal on Ray Capital Plaintiffs' summary judgment motion and disbursement of the substitute *res*. 16-cv-93, Dkt. 99.

The Non-Party Movants are aware of the Court's recent decisions denying consolidation and intervention, and vigorously opposed DHL's motions to consolidate and to intervene in the Ray Capital action. Now, rather than file the necessary similar motion to intervene in DHL's action, requesting identical relief as was requested by DHL – i.e., participation in the adjudication of the merits of the competing attachment claim - the Non-Party Movants seek to skip the required step in actually becoming a party to this action.[7] Rather, on October 14, 2016 the Non-Party Movants simply filed a Notice of Appearance (Dkt. 15), and a Motion to Vacate the attachment of DHL (Dkt. 16), referring to themselves as "Interested Parties" (Dkt. 16 at 1). But in fact, they are not parties at all – they are non-parties.

---

[7] No doubt for fear that if this Court were to examine in any detail the allegations and supporting documents filed it would likely conclude that the Ray Capital Plaintiffs' claims against the Funds must be dismissed or at least subordinated to the claim of DHL. Tellingly, the Ray Capital Plaintiffs failed to include in its exhibits a copy of the underlying contract between Tiger Capital Partners Limited ("Tiger Capital") and Newlead for the coal mine purchase transaction which is currently the subject of fraud action now underway involving various Newlead entities in New York. Ironically, here it is the Ray Capital Plaintiffs who seek to benefit from an alleged assignment of claims from Tiger Capital which claims themselves are tied to a fraudulent transaction that was a sham intended only to inflate Newlead's stock price. At a minimum, to prevent an improper turnover of the Funds to potentially bad actors in Newlead's stock inflation scam, the Court should allow DHL the opportunity to challenge the merits of Ray Capital Plaintiffs' claims.

# ARGUMENT

## A.    Standard to Vacate Attachment

Maritime attachments have been recognized by United States courts for centuries.  *See Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 267 (2d Cir. 2002).  There are two reasons for the granting of a maritime attachment.  "'First, attachment provides a means to assure satisfaction if a suit is successful'; the second purpose is 'to insure a defendant's appearance in an action, an aspect of attachment inextricably linked to a plaintiff's substantive right to recover.'"  *Id.* at 268 (citations omitted).

Plaintiff must demonstrate the following four elements to maintain an attachment order issued by a court: (1) a valid *prima facie* admiralty claim; (2) the defendant must be "absent" from the district; (3) the defendant's property must be within the district; and (4) there is no statutory or maritime bar.  *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,* 460 F.3d 434, 445 (2d Cir. 2006), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.,* 585 F.3d 58 (2d Cir. 2009);[8] *Ice Flake Maritime Ltd. v. Westcoat AS*, No. 07 Civ. 2002, 2007 WL 2979471, at *1 (S.D.N.Y. Oct. 11, 2007) (Castel, J.).

The Non-Party Movants challenge the first and fourth element in the *Aqua Stoli* test.  DHL's pleadings, and the circumstances surrounding the attachment of *res* in question, merit the denial of the Non-Party Movants' vacatur motion for the reasons set forth below.

---

[8]  *Aqua Stoli* also provided three equitable grounds wherein an attachment may be vacated.  460 F. 3d at 436.  None of the three grounds are applicable here nor have the Non-Party Movants t raised any of those equitable arguments.

**B.     DHL Has a Valid Prejudgment Attachment to Secure its Maritime Claim for Breach of a Charter Party**

DHL submits that its Rule B attachment action to obtain security for its contingent indemnity claim pursuant to a maritime contract (a charter party) is a valid maritime claim. *See, e.g., Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961).

The Non-Party Movants attempt to argue that because DHL's claim is based upon the outcome of an underlying arbitration, that it is not a valid admiralty claim. But many district courts have ruled that an adjudication of underlying liability is not a prerequisite to a claim for indemnity. Courts have noted that "[w]hether an indemnification issue is ripe for adjudication depends on the facts and circumstances of the case under consideration." *A/S J. Ludwig Mowingckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928, 932 (4th Cir. 1977). An important factor in considering ripeness is "whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated." *Id.* In determining whether an indemnity claim states a valid prima facie admiralty claim, some courts have looked to whether the plaintiff's expectation of payment to a third party is reasonable, and/or how imminent such payment is likely to be. *See, e.g., Exmar Shipping, N.V. v. Polar Shipping, S.A.*, 2008 WL 3992290, *3 (S.D.N.Y. Aug. 27, 2008) ("some courts have looked at the stage of litigation and the general context to determine whether plaintiff's request for security based on its expectation to be sued by third parties is reasonable"); s*ee also Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.*, 2005 WL 2446236, *2 (S.D.N.Y. Oct. 3, 2005) ("we find that it is not unduly speculative to assume that the physical damage claims are being asserted down the chain of charter parties and that plaintiff has a reasonable belief that it faces potential liability").

Although the Non-Party Movants focus on cases that look at whether an indemnity claim is ripe for determination, in a Rule B security action, as long as the underlying liability action has

been commenced, the claim is ripe for attachment in order to secure subsequent indemnification. *Navalmar (U.K.) Ltd v. Welspun Gujarat Stahl Rohren, Ltd.*, 485 F. Supp. 2d 399 (S.D.N.Y. 2007); c*f. Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532 (S.D.N.Y. 2007) (in absence of evidence that shipowner intended to press a demurrage claim against charterer, charterer's claim for contingent indemnity not ripe to support attachment).  This is consistent with Supplemental Rule B being a pre-judgment remedy.  As set forth in the Complaint, DHL's Hong Kong arbitration with its subcharterer has been commenced (Dkt. 1 at 5), and indeed is nearing resolution.  Additionally, London arbitration has been commenced by DHL against Defendants on September 2, 2016 (16-cv-93, Dkt. 100 ¶4, Ex. 1).

Even if an indemnity claim was considered premature under particular circumstances, "a district court may in some circumstances disregard the prematurity of a plaintiff's claim as a matter of discretion." *Patricia Hayes Assoc. v. Cammell Laird Holdings U.K.*, 339 F.3d 76, 82 (2d Cir. 2003); *see also Greenwich Marine, Inc. v. S.S. Alexandra*, 339 F.2d 901, 905 (2d Cir. 1965) ("The inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge.").  Accordingly, it is within the discretion of district courts to allow a party to obtain security for an otherwise premature indemnity claim.  *See Patricia Hayes*, 339 F.3d at 82; *J.K. Intern. Pty., Ltd. v. Agriko S.A.S.*, 2007 WL 485435 (S.D.N.Y. Feb. 13, 2007) (but finding that plaintiff had not carried burden of showing that it was likely to incur underlying liability).

In cases where district courts have chosen to exercise their discretion to uphold the plaintiff's attachment, there was some evidence in the record upon which the court could conclude that the plaintiff was likely to incur liability from a third party. *See, e.g., Daeshin Shipping Co. v. Meridian Bulk Carriers, Ltd.*, No. 05 Civ. 7173, 2005 WL 2446236, at *2 (S.D.N.Y. Oct. 3, 2005)

(upholding attachment and distinguishing *Greenwich* because, based on documentary evidence, there was evidence that a damage claim would be passed along and asserted against the plaintiff); *Hibiscus Shipping, Ltd. v. Novel Commodities S.A.*, No. 04 Civ. 2344, at 3-4 (S.D.N.Y. July 8, 2004) (Order denying motion for vacatur of attachment) (stating that a claim letter was sufficient to demonstrate ripeness); *Staronset Shipping Ltd. v. North Star Nav. Inc.*, 659 F.Supp. 189, 191 (S.D.N.Y. 1987) (noting that action had been brought *in rem* against ship owner).

In this case, where Defendants provided a vessel under the charter party where cracking of the hull was a clear breach of contract, and indisputably resulted in a large amount of damages incurred and put forward in arbitration against DHL by its subcharterer, the circumstances of this case are sufficient to award an attachment here.  It is not a matter of **whether** DHL will be found liable for the cracked hull, but simply of what the precise amount of damages will be.  *Oldendorff Carriers GmbH & Co. KG v. Sidor C.A.*, 2010 WL 334926, *1-2 (S.D.N.Y. Jan. 29, 2010) (noting that where indemnity claim can also be considered a separate breach of the contract, was not a question of whether liable, but amount of damages to be determined in underlying arbitration).

Accordingly, DHL has clearly met the first element to uphold its attachment under *Aqua Stoli* – a prima facie maritime claim for prejudgment security resulting from Defendants' breach of a charter party.

## C.   The Various Alleged Procedural Defects are not Relevant to the Validity of DHL's Attachment and are Not a Statutory or Maritime Bar to Attachment

The Non-Party Movants do not cite to one case applying the *Aqua Stoli* factor concerning "statutory or maritime bar to attachment."  This catch-all factor is rarely found to apply, likely due to the fact that upon granting an order for attachment, a court has already considered whether there is a statutory or other bar to such attachment.  This includes any applicable statute of limitations or other bar.  Instead, the Non-Party Movants seek to paint DHL's actions as improperly motivated

or manipulative, and to fit them into the *Aqua Stoli* standard without any support that proceeding as it did merits vacatur of DHL's attachment rights.  From the beginning, DHL has only sought to maintain its own attachment of the Vessel, while seeking an opportunity to be heard with respect to the priority of claims as between DHL and the Non-Party Movants.

As set forth above, when DHL filed its Rule B Complaint, substantial questions concerning the arrest and attachment of the Vessel by the Ray Capital Plaintiffs were pending.  Briefing on the Defendants' motion to vacate was ongoing.  DHL prudently sought to file an original complaint as opposed to intervening in a case which may have been imminently dismissed, thereby also invalidating DHL's own writ of attachment on the Vessel.  Other district courts have proceeded in this manner.  *See Flame, S.A., et al. v. Glory Wealth Shipping Pte Ltd.*, No. 2:13-cv-658 (E.D. Va.) (RGD) (Dkt. 36) (denying motion to intervene in vessel attachment case where "substantial jurisdictional questions" were pending), notwithstanding E.D. Va. Local Admiralty Rule E(13) requiring intervention.

Accordingly, DHL filed an original complaint, with the intention of attaching the Vessel once the jurisdictional challenges were determined with respect to the Ray Capital Plaintiffs' claims.  DHL made the Court fully aware that the Vessel was already under arrest/attachment in another action, and marked its own case as related to that action.  The case was accepted by this Court as related, and an order for writ of attachment was granted by the Court.  This Court has the discretion to proceed in any judicially efficient manner and to manage the docket how it sees fit.  This is true even when the Local Admiralty Rules are otherwise applicable.  *Steadt v. U.S.*, 157 F.Supp. 523, 525 (S.D.N.Y. 1953) ("Questions of pleading, practice and procedure in admiralty are to be dealt with liberally, in a non-technical spirit, and in accordance with equitable principles") (citing cases).  "Admiralty practice which has served as the origin of much of our modern federal

procedure, should not be tied to the mast of legal technicalities it has been the forerunner in eliminating from other federal practices." *Id.* (citing *British Transport Commission v. U.S.*, 354 U.S. 129, 139 (1957)); *see also Jones v. U.S.*, 180 F. Supp. 425 (W.D. Penn. 1959) (plaintiff permitted to amend pleadings to bring into conformity with Admiralty Rules).

The cases the Non-Party Movants rely on for vacatur under the "statutory or maritime bar" element are not applicable here, and indeed do not even address vacatur under *Aqua Stoli*. *See Goforth v. Owens*, 766 F.2d 1533 (11th Cir. 1985) (dismissal of case, a sanction of last resort, available in "extreme circumstances" was appropriate due to plaintiff's counsel's pattern of delay and deliberate refusal to comply with the court's directions); *Gyasi v. M/V Andre*, 2008 WL 906761, *1 (M.D. Fla. Apr. 1, 2008) (dismissing complaint for failure to plead with particularity under Fed. R. Civ. P. 8, failure to verify or even sign the pleadings, and failure to submit a proposed warrant of arrest or writ of attachment). By contrast, and particularly where deviation from the Local Rule was appropriate (and ratified by the Court through its issuance of the order for attachment, and acceptance of the case as "related" on the docket), the failure to intervene does not merit a vacatur here.

Similarly, the other alleged defects discussed by the Non-Party Movants (Dkt. 16 at 10-16) are not material. The Local Civil Rule governing service of process cited by the Non-Party Movants states that plaintiffs shall serve the summons and complaint in accordance with Fed. R. Civ. P. 4. At the time of the service of the writ of attachment on the substitute custodian (as provided in the Order) 90 days has not passed and therefore service of process was not untimely. Additionally, failure to stipulate to costs is not fatal to a case, or consolidation. *Jones v. U.S*, 180 F.Supp. at 427 (court declined to dismiss for failure to file a stipulation for costs). DHL did not violate **any** orders of this Court, any requests to stipulate to costs, or any orders concerning the

posting of security with the Marshal (which, presumably the Non-Party Movants had already done).

Finally, although the Non-Party Movants accuse DHL of seeking to avoid contribution to *custodia legis* costs in connection with the attachment, this is untrue.  As a primary matter, all of the *custodia legis* costs incurred to date have been approved by this Court and will be reimbursed to the Non-Party Movants from the Vessel sale proceeds.  16-cv-093, Dkt. 48.  And as set forth in DHL's own motion for approval and disbursement of *custodia legis* costs (16-cv-93, Dkt. 90), on August 25, 2016 DHL contributed to *custodia legis* costs in the amount of $84,462.20 as requested by the substitute custodian, National Maritime of Fort Lauderdale and as demanded from counsel for Ray Capital.[9]  This Court specifically signed an order which stated that DHL shall be responsible for its share of *custodia legis* costs accruing following its attachment of the Vessel.  As set forth above, DHL did not improperly or in bad faith delay the service of the writ of attachment on the Vessel.  DHL immediately served the attachment order on August 5, 2016 following the Court's August 4, 2016 Order upholding the Ray Capital Plaintiffs' Rule C arrest and Rule B attachment of the Vessel.

**D.    The Non-Party Movants Have No Standing in this Action and their Motion Should be Stricken Pursuant to Fed. R. Civ. P. 12(f) or the Court Should Decline to Rule on it Pursuant to the Court's Inherent Authority**

Supplemental Rule E(4)(f) provides that any party, "claiming an interest in [the attached property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these

---

[9] Counsel for Ray Capital via telephone discussions and email correspondence coordinated with the substitute custodian to demand that *custodia legis* costs attributable to DHL via the DHL attachment order be immediately transferred to National Maritime.  It is the Ray Capital Plaintiffs who first sought to pull DHL into the action by demanding *custodia legis* fees be paid as per the DHL attachment order and now that they have been reimbursed their *custodia legis* costs seek to deny DHL the opportunity to litigate its claim to the Fund.  Fairness and equity dictate that the Ray Capital Plaintiffs be barred from challenging DHL's attachment after supporting the very same attachment for the purpose of having DHL contribute to *custodia legis*.

rules." FED. R. CIV. P., SUPP. R. E(4)(f) (emphasis added).  The Non-Party Movants' motion to vacate must be stricken as an unauthorized non-party filing.   The Non-Party Movants' have no standing to file documents, they have not sought to intervene in the above-captioned action, and the motion is not authorized by the Federal Rules of Civil Procedure.

DHL incorporates by reference the legal arguments made in its Motion to Strike (Dkt. 17), and states that on this basis the motion to vacate should be stricken or denied outright.  *McGuire-Pike v. Ameri-Ck, Inc.*, 2006 WL 4109668, *2 (D. N.M. July 23, 2006) (declining to consider a motion to dismiss made by a non-party who failed to intervene).  The Non-Party Movants are not parties to this proceeding and have no standing to bring a motion pursuant to Supplemental Admiralty Rule E, which is a mechanism by which owners of attached property appear in an action for an emergency hearing to protect their due process.  "The Advisory Committee notes explain that 'Rule E(4)(f) is designed to satisfy the constitutional requirement of due process by guaranteeing to the ***shipowner*** a prompt post-seizure hearing at which he can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.'"  *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263, 272 (2d Cir. 2002) (overruled on other grounds) (emphasis added).  The Non-Party Movants do not seek to intervene in this action pursuant to Fed. R. Civ. P. 24, and fail to provide the Court with any indication of their interest in this case, or other reason to consider their motion to vacate pursuant to Supplemental Admiralty Rule E(4)(f).

It is also well established that district courts have inherent authority to manage their own dockets in the interest of judicial economy and efficiency.  *E.g., Dietz v. Bouldin*, 136 S.Ct. 1885, 1892 (2016) ([t]his Court has also held that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").  This remedy can be appropriate for various reasons, including the dismissal of frivolous filings, or

those that fail to comply with the Federal Rules of Civil Procedure. *E.g., Weiland v. Palm Beach ounty Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (where district court used inherent authority to control docket by dismissing a complaint for failure to comply with Fed.R. Civ. P.); *Guthrie v. Wells Fargo Home Mortg. NA*, 2014 WL 3749305, *15 (N.D. Ga. July 28, 2014) (noting court's authority to limit abusive filings) (citing cases).

Civil litigation is governed by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 1. "[T]he Rules, and the Court's inherent authority to permit filings in a civil action, have boundaries." *DRFP, LLC v. Republica Bolivariana de Venezuela,* No. 2:04-cv-793, 2012 WL 995288, at *1 (S.D. Ohio Mar. 22, 2012). To protect these boundaries, a presumption exists that "absent a specific reason to permit it, filings by non-parties have no place in litigation and ought not to be made." *Id*. Accordingly, even if this Court chooses not to strike the motion to vacate filed by the Non-Party Movants, the Court should deny the motion or decline to rule on it on the basis of its inherent authority to enforce the Federal Rules of Civil Procedure, namely Rule 24 and the requirement of intervention into an action prior to the filing of motions or other pleadings in that action.

**E.      The Non-Party Movants Have No Standing Because Their Own Claims to the Funds Fail as a Matter of Law**

The relief requested by the Non-Party Movants has been filed because they assert that their claim has priority to the funds over the claims of DHL. Finally, the Non-Party Movants have no standing because their own claims to the funds should be dismissed. To the extent that the Non-Party Movants' right to make the present motion is on the basis of its own alleged interest in the Funds, the Court should make a determination of those claims before making a ruling on the Motion to Vacate filed by the very claimants who have not yet prevailed in their own action.

The Non-Party Movants have asserted claims based on the breach of a promissory note in favor of Ray Capital Inc., and also have alleged the breach of four ship mortgages which secure the Ray Capital promissory note as well as three other notes.  As an initial matter, the Movants have not demonstrated on the pleadings that there was a breach of the Ray Capital promissory note, and even if there was, that a breach entitles them to a Rule C or Rule B claim against the Vessel.  A breach of an underlying contract secured by a preferred mortgage does not give rise to a claim under 46 U.S.C. § 31325.  *See, e.g., S.E.L. Maduro (Florida), Inc. v. M/V Antonio de Gasteneta,* 833 F.2d 1477, 1482 (11th Cir. 1987) (holding that a cause of action for breaching an underlying contract secured by a maritime lien is "altogether different" from a cause of action to enforce a maritime lien).  Additionally, there are serious questions as to whether a mortgage secured by a Vessel whose use of the funds had no relationship to the purchase of the vessel or other maritime activities even gives this Court subject matter jurisdiction in admiralty.  *Beluga Holding Ltd. v. Commerce Capital Corp.*, 212 F.3d 1199 (11th Cir. 2000) (holding that Section 31325 did not grant the court jurisdiction over an underlying dispute even though that dispute was secured by a preferred mortgage); *First Bank Puerto Rico v. Swift Access Marketing, Inc.*, 697 F. Supp. 2d 259 (D.P.R. 2010) (holding that a complaint seeking enforcement of a promissory note, even one secured by a preferred mortgage, "is devoid of federal law issues").

Finally, the breach of mortgage claims which are unrelated to any breach of a promissory note (the mortgages in favor of Oppenheim Capital Ltd, Cheyenne Holdings Ltd. and Labroy Shiptrade Limited) all involve alleged breaches which took place in the post-arrest context and therefore cannot constitute the basis for the Rule B claims.  *See Dresder Bank AG v. M/V Olympia Voyager*, 465 F.3d 1267, 1272 (11th Cir. 2006).  Any action pursuant to the Supplemental Rules

vessel must be premised on the existence of a valid, maritime claim **at the time that the action was filed**. *Petroleos Mexicanos Refinacion v. M/T KING A*, 554 F.3d 99, 102 (3d Cir. 2009)

Finally, as a factual matter, the Non-Party Movants have presented no evidence to support their allegations as to any supposed breaches of the mortgages.  Mere payment by the Ray Capital Plaintiffs of accrued crew wages (accrued, but not past-due wages for a period of time being typical in the industry) does not mean that the wages were past-due or that any breach had occurred. Further, various allegations as to the "seaworthy state" of the Vessel have not been supported by anything in the record – including allegations concerning the insurance payments, accumulated debt, and that the Vessel was in a state of "disrepair."  Indeed, once the Vessel was sold at auction, it was able to sail immediately, demonstrating that in fact it was not in a state of disrepair.

## CONCLUSION

For the foregoing reasons, Plaintiff DHL Project & Chartering Limited respectfully requests that this Court deny the Motion to Vacate filed by non-parties Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd. and Labroy Shiptrade Limited.   In the alternative, DHL requests that this Court decline to rule on the motion pursuant to its inherent authority to limit the filings of non-parties.

This 31ˢᵗ day of October, 2016.


BRENNAN WASDEN & PAINTER LLC


By:  */s/ Travis D. Windsor*
          William E. Dillard
          State Bar No. 222030
          Travis D. Windsor
          State Bar No. 770441

P.O. Box 8047

Savannah, Georgia 31412
(912) 232-6700
FAX (912) 232-0799
bdillard@brennanwasden.com
twindsor@brennanwasden.com
565-6

HOLLAND & KNIGHT LLP
James H. Power *(pro hac vice)*
31 West 52nd Street
New York, NY 10019
Phone: (212) 513-3200
Fax:  (212) 385-9010
Email: james.power@hklaw.com

*Attorneys for Plaintiff DHL Project &*
*Chartering Limited*