IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

DHL PROJECT & CHARTERING
LIMITED,

    Plaintiff,

v.

NEWLEAD HOLDINGS LTD.;
NEWLEAD SHIPPING S.A.;
NEWLEAD BULKERS S.A.;
NEWLEAD CASTELLANO LTD.;
GRAND VENETICO INC.; and
NEWLEAD VENETICO LTD.,

    Defendants.

CV 416-123

**O R D E R**

Before the Court is Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd., and Labroy Shiptrade Limited's (collectively, "Interested Parties") Motion to Vacate Attachment. (Doc. 16.) After a careful review of the parties' filings and for the reasons below, the Interested Parties' motion (doc. 16) is **GRANTED**.

## I. BACKGROUND

On May 25, 2016, upon the filing of Plaintiff DHL Project & Chartering Limited's ("DHL") verified complaint in the present action, the Court entered an order directing the issuance of process for maritime attachment and garnishment of the M/V

Newlead Castellano, IMO No. 9686338 ("Vessel"). (Docs. 1, 2.) Through their present motion, the Interested Parties seek to vacate DHL's attachment pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure. (Doc. 16.) The pertinent facts underlying the motion are as follows.

On or about October 27, 2011, DHL and Defendant Newlead Shipping S.A. entered into a charter party contract for DHL's use of the shipping vessel M/V Newlead Venetico. (Doc. 1, ¶ 13.) Pursuant to the charter party contract, Defendants Newlead Shipping S.A. and Grand Venetico, Inc. were obligated to, *inter alia*, exercise due diligence to ensure the aforementioned vessel was seaworthy and properly maintained. (Id. ¶ 14.) On December 8, 2011, DHL sub-chartered the M/V Newlead Venetico to non-party Zheijiang Materials Industry Fuel Group Co., Ltd. (the "Sub-Charterer") for a shipment of cargo from Australia to China. (Id. ¶ 15.) Shortly after loading of the Sub-Charter's cargo onto the M/V Newlead Venetico on January 4, 2012, the vessel was detained by the Australian Maritime Safety Authority due to various alleged deficiencies. (Id. ¶ 16.) Loading eventually resumed on or about March 3, 2012, and the M/V Newlead Venetico commenced her voyage to the discharge port in China on or about March 5, 2012. (Id.) DHL and the Sub-Charterer subsequently initiated arbitration in Hong Kong, wherein the Sub-Charterer

alleges that it incurred significant losses from the delayed delivery of its cargo. (Id. ¶¶ 18-19; see also Doc. 1-3.) DHL has provided no further information or evidence regarding the status of the aforementioned Hong Kong arbitration other than an unsubstantiated statement that it "is nearing resolution." (Doc. 21, at 9.)

On April 19, 2016, the Interested Parties instituted the otherwise-unrelated matter of *Ray Capital Inc., et al. v. M/V Newlead Castellano, IMO No. 9686338, et al.*, Case No. 4:16-CV-093 (S.D. Ga.) (the "Ray Action"), by filing a verified complaint with this Court alleging a number of claims against the Vessel and Defendant Newlead Castellano Ltd.[1] (Ray Action, Doc. 1.) The Court subsequently entered orders directing the issuance of a warrant for the maritime arrest - as well as the issuance of process of maritime attachment and garnishment - of the Vessel. (Ray Action, Docs. 8, 10.)

On May 25, 2016, DHL instituted the present action against Defendant Newlead Castellano Ltd. as well as Defendants Newlead Holdings Ltd., Newlead Shipping S.A., Newlead Bulkers S.A.,

---

[1] The Interested Parties subsequently amended their complaint in the Ray Action such that they now assert the following claims: (1) a foreclosure claim pursuant to Ray Capital's promissory note and the Maritime Lien Act and the Ship Mortgage Act, 46 U.S.C. § 31301, *et seq.* ("Act"); (2) a foreclosure claim pursuant to the Interested Parties' preferred mortgages and the Act; (3) a foreclosure claim pursuant to Ray Capital's payment of seamen's wages; and (4) a breach of contract claim pursuant to the Interested Parties' preferred mortgages. (Ray Action, Doc. 18.)

3

Grand Venetico Inc., and Newlead Venetico Ltd.[2] (Doc. 1, ¶¶ 21-69.) The Court subsequently entered an order in the present action directing the issuance of process of maritime attachment and garnishment of the Vessel.[3] (Doc. 2.)

On July 14, 2016, on the Interested Parties' motion in the Ray Action, the Court entered an order directing the interlocutory admiralty sale of the Vessel. (Ray Action, Doc. 48, as subsequently amended in part by the Court's Order dated August 4, 2016, Doc. 65.) The Vessel was sold to a third party on August 8, 2016, and the Court entered an order confirming the sale on August 16, 2016.[4] (Ray Action, Docs. 65, 75.)

---

[2] DHL's complaint in this case alleges: (1) a breach of contract claim against Newlead Shipping S.A., Newlead Bulkers S.A., and Grand Venetico Inc.; and (2) an alter ego claim against Newlead Holdings Ltd. for its control of Newlead Shipping S.A., Newlead Bulkers S.A., Defendant Newlead Castellano Limited, Grand Venetico Inc., and Newlead Venetico Ltd. (Doc. 1, ¶¶ 21-69.) Notably, DHL did not name the Vessel as a defendant in this Action, but sought to attach the Vessel pursuant to Federal Rule of Procedure, Supplemental Admiralty Rule B as security for its claims against Defendants. DHL states that the underlying dispute here "is based on an indemnity claim for an arbitration award which may be issued against DHL in Hong Kong arbitration. Thereafter, DHL will pursue recovery against Newlead Shipping and/or Grand Venetico Inc. in London. [DHL] brings this action solely to obtain quasi in rem jurisdiction over [Defendants] and security for its claims." (Doc. 1, ¶ 71.)

[3] Despite obtaining the Court's Order for Issuance of Process of Maritime Attachment and Garnishment on May 25, 2016, DHL did not serve this Order (or the related Process of Maritime Attachment and Garnishment) until August 5, 2016. (Doc. 14, ¶¶ 2-4.) Notably, DHL has not claimed to have served the aforementioned papers on the United States Marshal or the Defendants, but rather has only alleged to have served them to the then-substitute custodian for the Vessel, National Maritime Services of Fort Lauderdale, Florida. (Id.)

[4] The Vessel was sold to non-party Strategic Shipping, Inc. for a sale price of $7,400.000.00 USD plus the current market price of any fuel or gas oil remaining on board the Vessel at the time of its delivery to Strategic Shipping, Inc. (Ray Action, Doc. 75.) The proceeds from the sale of the Vessel are presently deposited in the Court's registry for safe-keeping.

4

On July 28, 2016, shortly before the sale of the Vessel, DHL filed a motion to consolidate the Ray Action with the present action. (Doc. 11.) On August 25, 2016, the Court denied DHL's motion to consolidate on the grounds that the two actions did not present common questions of law or fact. (Doc. 13, at 3-4.) On September 8, 2016, DHL filed a motion to intervene in the Ray Action pursuant to Federal Rule of Civil Procedure Rule 24(a). (Ray Action, Doc. 80.) On October 5, 2016, the Court denied DHL's motion to intervene on the grounds that DHL had failed to demonstrate a sufficient interest relating to the property or transaction which is the subject of the Ray Action. (Ray Action, Doc. 94.) On October 11, 2016, DHL filed its Notice of Interlocutory Appeal seeking review of the Court's Order dated October 5, 2016.[5] (Doc. 98.)

On October 14, 2016, the Interested Parties filed their present motion to vacate DHL's attachment and garnishment. (Doc. 16.) On October 19, 2016, DHL filed a motion seeking to strike the Interested Parties' present motion to vacate pursuant to Rule 12(f). (Doc. 17.) On October 28, 2016, the Court ordered DHL to show cause by no later than October 31, 2016 as to why DHL's attachment and garnishment of the Vessel (and any

---

[5] DHL also filed an Emergency Motion for Stay Pending Appeal seeking an order staying the Ray Action (or in the alternative an order enjoining the distribution of the proceeds from the sale of the Vessel) during the pendency of DHL's appeal of denial of its motion to intervene. (Ray Action, Doc. 99.) On November 1, 2016, the Eleventh Circuit denied DHL's Emergency Motion for Stay Pending Appeal. (Ray Action, Doc. 107.)

5

substitute *res* thereof) should not be vacated. (Doc. 20.) On October 31, 2016, DHL filed its opposition to the Interested Parties' present motion to vacate. (Doc. 21.) On November 10, 2016, the Interested Parties filed their reply in support of their motion to vacate. (Doc. 23.) Accordingly, the Interested Parties' motion to vacate DHL's attachment and garnishment is ripe for consideration.

## II. DISCUSSION

Supplemental Admiralty Rule B governs the process by which a party may attach another party's assets in admiralty.[6] Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 438 (2d Cir. 2006), overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58 (2d Cir. 2009). "If a defendant is not found within the district, . . . a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process . . . . The court must review the complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment." FED. R. CIV. P. SUPP. RULE B(1). "To begin the process, a plaintiff must file a verified complaint praying for

---

[6] The historical purposes of maritime attachment have been: (a) to gain jurisdiction over an absent defendant; and (b) to assure satisfaction of a judgment. Aqua Stoli Shipping Ltd., 460 F.3d at 437-38 (citing Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 693 (1950)).

6

an attachment and an affidavit stating that, to the best of the plaintiff's knowledge, the defendant cannot be found within the judicial district." Aqua Stoli Shipping Ltd., 460 F.3d at 438 (citation omitted). If the plaintiff's filings comply with these conditions, the court must enter an order authorizing the attachment, which the plaintiff may then serve on the United States Marshal (if the property is a vessel or tangible property on board a vessel) or any persons in possession of the defendant's property located within the district (all other tangible or intangible property). Id.; see also FED. R. CIV. P. SUPP. RULE B(1). The order of attachment may be requested and granted *ex parte*, though notice of the attachment to the defendant via appropriate service is required. Aqua Stoli Shipping Ltd., 460 F.3d at 438, see also FED. R. CIV. P. SUPP. RULES B(2), E(3).

Under Supplemental Admiralty Rule E, however, "any person claiming an interest in [arrested or attached property] shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." FED. R. CIV. P. SUPP. RULE E(4)(f); see also LAdR 9(d), SDGa ("Whenever there is an arrest in rem, or whenever property is attached, the party arrested or any person having a right to intervene in respect of the thing attached, may, upon evidence

7

showing any improper practice or a manifest want of equity on the part of the libellant, be entitled to an order requiring the libellant to show cause instanter why the arrest or attachment should not be vacated."). This post-attachment hearing "is not intended to resolve definitively the dispute between the parties, but only to make a preliminary determination whether there were reasonable grounds for issuing the [attachment], and if so, to fix an appropriate bond" and the scope of this hearing "is left to the discretion of the district court." Salazar v. Atl. Sun, 881 F.2d 73, 79-80 (3d Cir. 1989) ("Generally speaking, an exhaustive adversarial hearing is not necessary for resolution of [whether reasonable grounds existed for issuing the attachment]. Thus, in many instances we would expect that an informal proceeding, perhaps in the nature of a conference before the district court, supplemented by affidavits and legal memoranda as directed by the court might be sufficient.").

The party having obtained the maritime attachment bears the burden of showing that the attachment should not be vacated. FED. R. CIV. P. SUPP. RULE E(4)(f); LAdR 9(d), SDGa; James v. M/V Eagle Exp., 2012 WL 3068791, at *3 (S.D. Ala. July 27, 2012). To do so, the plaintiff must prove by a preponderance of the evidence that the arrest or attachment was supported by "reasonable grounds." James, 2012 WL 3068791, at *3. This requires the party who obtained the attachment to demonstrate:

8

(1) it has a valid *prima facie* admiralty claim against the defendant; (2) that the defendant cannot be found within the district; (3) that the defendant's property may be found in the district; and (4) that there is no statutory or maritime bar to attachment. Zambrano v. Vivir Seguros, C.A., 2016 WL 5076185, at *2 (S.D. Fla. Sept. 20, 2016) (citing Aqua Stoli Shipping Ltd., 460 F.3d at 445). In determining whether an attachment should be vacated, "the court's inquiry must focus on the facts known at the time of the attachment." Dannebrog Rederi AS v. M/Y True Dream, 146 F. Supp. 2d 1307, 1311 (S.D. Fla. 2001) (citing W. Bulk Carriers (Australia), Pty. Ltd. v. P.S. Int'l, Ltd., 762 F. Supp. 1302, 1307 (S.D. Ohio 1991)). If the plaintiff fails to meet its burden, the district court must vacate the attachment.[7] Zambrano, 2016 WL 5076185, at *2 (citing Aqua Stoli Shipping Ltd., 460 F.3d at 445.)

Here, Plaintiff has failed to demonstrate a valid *prima facie* admiralty claim against Defendants. As set forth in DHL's

---

[7] Federal courts also have the discretion to vacate an attachment where required by the equities. Zambrano, 2016 WL 5076185, at *2 (citing McDermott Gulf Operating Co. v. Con-Dive, LLC, 371 F. App'x 67, 68-70 (11th Cir. 2010); ProShipLine, Inc. v. Aspen Infrastructures, Ltd., 585 F.3d 105, 113 (2d Cir. 2009)). Equitable vacatur may be appropriate where: (a) the defendant is subject to suit in a convenient adjacent jurisdiction; (b) the plaintiff could obtain in personam jurisdiction over the defendant in the district where the plaintiff is located; or (c) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. Id. (citing Aqua Stoli Shipping Ltd., 460 F.3d at 445; Williamson v. Recovery Ltd. P'ship, 542 F.3d 43, 52 (2d Cir. 2008)). The party seeking to vacate the attachment bears the burden to establish any equitable grounds for vacatur. Id. (citing Aqua Stoli Shipping Ltd., 460 F.3d at 445 n.5). As vacatur is appropriate based on DHL's failure to state a valid prima facie admiralty claim, the Court has not concerned itself with determining whether equitable vacatur would also be appropriate.

9

complaint, DHL filed the present action "solely to obtain *quasi in rem* jurisdiction over Defendants and security for its claims."[8] (Doc. 1, ¶ 71.) DHL itself admits, however, that its claims against Defendants are "<u>contingent</u> indemnity claim[s]." (Id. ¶ 21 (emphasis added).) As DHL concedes in its complaint, "the underlying dispute arising from the charter party [between DHL and Defendant Newlead Shipping S.A. concerning the shipping vessel M/V Newlead Venetico] is based on an indemnity claim for an arbitration award which <u>may</u> be issued against DHL in Hong Kong arbitration." (Id. ¶ 71 (emphasis added).) Indeed, DHL states that "<u>[u]pon a finding by the Hong Kong arbitration panel</u> that there was a personal want of due diligence on the part of [Defendants] Newlead Shipping and/or Grand Venetico, Inc. to make the [M/V] Newlead Venetico seaworthy, for which DHL is responsible, DHL <u>will be</u> liable to [the Sub-Charterer] and will thereafter pursue its claim against Newlead Shipping and/or Grand Venetico Inc. in London Arbitration for indemnity pursuant to the time charter." (Id. ¶ 20 (emphasis added).)

---

[8] While not fatal to its claims, the Court notes that DHL willingly admits that it does not intend to pursue direct adjudication of its claims against Defendants in this Court. (Doc. 1, ¶ 71.) Rather, DHL intends to pursue its claims against Defendants in arbitration to be instituted in London, England. (Id.) As an aside, the Court notes that DHL has put forth no basis for how it intends to compel Defendant Newlead Castellano Ltd., the (now-former) owner of the Vessel, to engage in arbitration on an alter-ego claim given that the aforementioned defendant is not a named party to the contract containing the arbitration clause upon which DHL relies. (See Doc. 1, ¶¶ 8, 13; Doc. 1-1, at 8-9, 39.)

10

While DHL asserts that the "Hong Kong arbitration with [the Sub-Charterer] has been commenced" and "is nearing resolution" (doc. 21, at 9), it has provided no evidence of the status of the aforementioned arbitration proceedings other than attaching to its present complaint a copy of the Sub-Charterer's "Defence and Counterclaim Submission (Amendment)" dated August 26, 2015. (See Doc. 1-3; see also Doc. 1, ¶ 19.) The Court can glean no information from this document regarding the status of the arbitration between DHL and the Sub-Charterer, the result of which DHL's present claims against Defendants are contingent, other than that the aforementioned arbitration process has indeed been initiated. Implicit in DHL's statement that the Hong Kong arbitration is nearing completion is the admission that there has not been a determination of liability or a settlement in that proceeding. Moreover, while DHL has titled its cause of action against Defendants as a "breach of contract" claim, it has not alleged that Defendants have actually breached their agreement with DHL.[9] Finally, while DHL alleges to have initiated arbitration proceedings in London, England against Defendants Newlead Shipping S.A. and Grand Venetico Inc. as of

---

[9] See Doc. 1, ¶ 24 ("If there is a finding in the sub-charter arbitration [between DHL and the Sub-Charterer in Hong Kong] that there was a personal want of due diligence to make the vessel seaworthy on the part of Owners for which DHL is responsible, Newlead Shipping, Newlead Bulkers, and Grand Venetico Inc. will have breached their obligations to DHL with respect to seaworthiness and maintenance, which caused the detention of the vessel [M/V Newlead Venetico] in Australia, the delays in the delivery of cargo, and the losses claimed by [the Sub-Charterer]." (emphasis added)).

11

September 2, 2016 pursuant to Section 14(4) of the United Kingdom's Arbitration Act 1996, this London arbitration was not initiated until *after* DHL attached the Vessel and, more importantly, this arbitration proceeding does not include as a party thereto the actual owner of the attached Vessel, Defendant Newlead Castellano Ltd. (See Doc. 100, ¶ 4; see also Doc. 100-1.)

Fatal to DHL's attachment is that attachment under Rule B is not available to obtain security for prospective contingent indemnity claims. Bottiglieri Di Navigazione SPA v. Tradeline LLC, 293 F. App'x 36, 37 (2d Cir. 2008). This is because a cause of action for indemnity is not ripe until there has been either a determination of liability or a settlement that establishes the purported indemnitor's obligation to pay. See Armstrong v. Alabama Power Co., 667 F.2d 1385, 1388 (11th Cir. 1982) (citations omitted) (dismissing claims for contribution and indemnification as premature where there was neither a determination of liability nor a settlement in the underlying litigation for which contribution and indemnification was sought) (citing A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co., 559 F.2d 928, 932-33 (4th Cir. 1977)); Bottiglieri Di Navigazione SPA, 293 F. App'x at 36 (vacatur of Rule B attachment on contingent indemnity claim was proper claim was not ripe under English law because the plaintiff had not

12

actually made a payment to the third party); see also In re Durango-Georgia Paper Co., 2007 WL 7023837, at *7 (Bankr. S.D. Ga. Sept. 21, 2007) ("[A] cause of action for contribution or indemnity is not ripe until there has been either a determination of liability or a settlement that establishes the plaintiff's obligation to pay." (citations omitted)).

Here, whether Defendants are obligated to indemnify DHL against liability for damages allegedly suffered by the Sub-Charterer depends in the first place upon whether DHL is found liable to the Sub-Charterer in the Hong Kong arbitration. The claims of the Sub-Charterer against DHL – upon which Defendants' alleged obligation to indemnify DHL rest – are still in dispute. Further, DHL has not alleged that the Defendants have actually breached their agreement and, while DHL has allegedly initiated arbitration against Defendants Newlead Shipping S.A. and Grand Venetico Inc. directly, it has not initiated proceedings against the actual owner of the Vessel, Defendant Newlead Castellano Ltd. As such, DHL's indemnity claims against Defendants are presently unripe for adjudication, and therefore DHL has failed to establish a *prima facie* admiralty claim. Thus, DHL was not entitled to attach the Vessel (and any substitute *res* thereof) under Rule B at the time it filed its claim.

Nevertheless, DHL requests that – even if its claims are deemed premature – the Court exercise its equitable discretion

to uphold the attachment. DHL cites several cases from the Second Circuit that have suggested that district courts possess such discretion. See, e.g., Patricia Hayes Assocs., Inc. v. Cammell Laird Holdings U.K., 339 F.3d 76, 82-83 (2d Cir. 2003) ("[A] district court *may* in some circumstances disregard the prematurity of a plaintiff's claim as a matter of discretion." (emphasis original)); Greenwich Marine, Inc. v. S.S. Alexandra, 339 F.2d 901, 905 (2d Cir. 1965) ("[S]ome district judges sitting in admiralty have been willing under certain circumstances to ignore the prematurity of a claim."). DHL has failed, however, to cite any binding precedent from the Eleventh Circuit that would allow this Court to ignore DHL's failure to carry its burden to demonstrate a valid *prima facie* admiralty claim. See Zambrano, 2016 WL 5076185, at *2 ("If the plaintiff fails to meet its burden, the district court must vacate the attachment." (citing Aqua Stoli Shipping Ltd., 460 F.3d at 445)). Moreover, it is unclear whether the discretion contemplated in the cases cited by DHL survived the Second Circuit's decision in Aqua Stoli. See Aqua Stoli Shipping Ltd., 460 F.3d at 445 ("[A] district court <u>must</u> vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rule B and E." (emphasis added)); see also Sonito Shipping Co. v. Sun United Mar. Ltd., 478 F. Supp. 2d 532, 544 (S.D.N.Y. 2007). Even if such

14

equitable discretion does exist, however, it "should only be exercised under compelling circumstances." Sonito Shipping Co., 478 F. Supp. 2d at 544 (citations omitted). Such compelling circumstances do not exist here, particularly in light of the uncertain nature of DHL's claims against Defendants.

### III. CONCLUSION

Upon the foregoing, the Interested Parties' Motion to Vacate Attachment (doc. 16) is **GRANTED** and the order directing the issuance of process of maritime attachment and garnishment of the Vessel granted to DHL (doc. 2) is **VACATED**.[10] Based on this present vacatur, the Court has serious concerns regarding its jurisdiction over the present case. Accordingly, DHL shall show cause **by no later than December 5, 2016** why the present case should not be dismissed for lack of jurisdiction.

**ORDER ENTERED** at Augusta, Georgia, this 18th day of November, 2016.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[10] Because the Interested Parties are entitled to seek a vacatur of DHL's attachment of the Vessel based on the interest claimed by the Interested Parties in the Vessel itself, DHL's Motion to Strike (doc. 17) is **DENIED**. See FED. R. CIV. P. SUPP. RULE E(4)(f); LAdR 9(d), SDGa; see also Doc. 2, at 2.

15