IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

DHL PROJECT & CHARTERING  
LIMITED,

    Plaintiff,

v.      CV 416-123

NEWLEAD HOLDINGS LTD.;  
NEWLEAD SHIPPING S.A.;  
NEWLEAD BULKERS S.A.;  
NEWLEAD CASTELLANO LTD.;  
GRAND VENETICO INC.; and  
NEWLEAD VENETICO LTD.,

    Defendants.

**O R D E R**

Before the Court is Plaintiff DHL Project & Chartering Limited's ("DHL") Motion to Distribute Proceeds of the Sale Authorized as *Custodia Legis* Expenses. (Doc. 25.) Defendants' response to that motion was due on or before December 15, 2016; to date, Defendants have failed to respond to DHL's motion. On December 16, 2016, however, a response in opposition was filed by Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd., and Labroy Shiptrade Limited's (collectively, the "Interested Parties"). (Doc. 31.) After a review of these and other related filings and for the reasons stated below, DHL's motion (doc. 25) is **GRANTED**.

## I. BACKGROUND

On or about October 27, 2011, DHL and Defendant Newlead Shipping S.A. entered into a charter party contract for DHL's use of the shipping vessel M/V Newlead Venetico. (Doc. 1, ¶ 13.) On December 8, 2011, DHL sub-chartered the M/V Newlead Venetico (the "Venetico") to non-party Zheijiang Materials Industry Fuel Group Co., Ltd. (the "Sub-Charterer") for a shipment of cargo from Australia to China. (Id. ¶ 15.) Shortly after loading of the Sub-Charter's cargo onto the M/V Newlead Venetico on January 4, 2012, the Venetico was detained by the Australian Maritime Safety Authority due to various alleged deficiencies. (Id. ¶ 16.) Loading eventually resumed on or about March 3, 2012, and the Venetico commenced her voyage to the discharge port in China on or about March 5, 2012. (Id.) DHL and the Sub-Charterer subsequently initiated arbitration in Hong Kong, wherein the Sub-Charterer alleges that it incurred significant losses from the delayed delivery of its cargo. (Id. ¶¶ 18-19; see also Doc. 1-3.)

On April 19, 2016, the Interested Parties instituted an otherwise-unrelated action, *Ray Capital Inc., et al v. M/V Newlead Castellano, et al.*, Case No. 4:16-CV-123 (S.D. Ga.) (the "Ray Action"), by filing a verified complaint with this Court alleging a number of claims against M/V Newlead Castellano, IMO No. 9686338, *in rem* (the "Vessel") and Newlead Castellano Ltd.

(Ray Action, Doc. 1.) Generally, the Interested Parties seek to foreclose on the Vessel in connection with promissory notes, guaranties, and preferred mortgages on the Vessel executed in their favor by Newlead Holdings Ltd. and/or Newlead Castellano Ltd. (Ray Action, Doc. 18.) On April 19, 2016, the Court entered orders in the Ray Action directing the issuance of a warrant for the maritime arrest - as well as the issuance of process of maritime attachment and garnishment - of the Vessel in favor of the Interested Parties. (Ray Action, Docs. 8, 10.) Notably, a substitute custodian was appointed to provide for the preservation, storage, and safekeeping of the Vessel during its arrest at the request of the Interested Parties, namely National Maritime Services of Fort Lauderdale, Florida (the "Custodian"). (Ray Action, Docs. 4, 7.)

On May 25, 2016, DHL instituted the instant action. (Doc. 1.) DHL's complaint alleges: (1) a breach of contract claim against Defendants Newlead Shipping S.A., Newlead Bulkers S.A., and Grand Venetico Inc.; and (2) an alter ego claim against Defendants Newlead Holdings Ltd. for its control of Defendants Newlead Shipping S.A., Newlead Bulkers S.A., Newlead Castellano Ltd., Grand Venetico Inc., and Newlead Venetico Ltd.[1] (Doc. 1,

---

[1] Notably, DHL has not alleged that it holds a maritime lien on the Vessel, nor has it moved to arrest the Vessel under Supplemental Admiralty Rule C. Rather, DHL states that the dispute underlying this action "is based on an indemnity claim for an arbitration award which may be issued against DHL in [the] Hong Kong arbitration [between DHL and the Sub-Charterer]. Thereafter,

3

¶¶ 21-69.) That same day, the Court entered an Order in this action directing the issuance of process of maritime attachment and garnishment of the Vessel in favor of DHL pursuant to Supplemental Admiralty Rule B. (Doc. 2.)

On July 14, 2016, upon the Interested Parties' motion in the Ray Action, the Court entered an order directing the interlocutory admiralty sale of the Vessel pursuant to Supplemental Admiralty Rule E(9)(a) (the "Order for Sale"). (Ray Action, Doc. 48, as subsequently amended in part by the Court's Order dated August 4, 2016, Doc. 65.) Notably, despite DHL having obtained the Order directing the issuance of maritime attachment and garnishment of the Vessel on May 25, 2016, DHL did not purport to serve the aforementioned Order (or the resulting process of maritime attachment and garnishment) on the Custodian until August 5, 2016. (See Doc. 14, at 2.) Upon receipt of the aforementioned Order and process on August 5, 2016, the Custodian instructed DHL to "immediately forward" $107,000.00 to the Custodian, this figure representing one-half of the anticipated custodial costs to be incurred by the Custodian from that date through the Vessel's anticipated date of sale. (Id. at 2, 10-11.) The Vessel was sold on August 8, 2016 pursuant to the Order for Sale, and the Court entered an

---

DHL will pursue recovery against Newlead Shipping and/or Grand Venetico Inc. in London. [DHL] brings this action solely to obtain quasi in rem jurisdiction over [the defendants in the DHL Action] and security for its claims." (Doc. 1, ¶ 71.)

4

Order confirming the sale on August 16, 2016.[2] (Ray Action, Docs. 65, 75.) DHL, however, waited until August 25, 2016 to tender payment to the Custodian in the amount of $84,462.20.[3]

---

[2] As set forth in the Order for Sale, the interlocutory sale of the Vessel was warranted because of: (1) the great expense being incurred to keep the Vessel seaworthy (thereby deteriorating its value as collateral for the Interested Parties and other creditors); and (2) the limited tools available to the Vessel's crew to prevent corrosion and other physical deterioration. (Ray Action, Doc. 48.) See FED. R. CIV. P., SUPP. ADM. R. E(9)(a). Notice of the sale of the Vessel was duly published by the United States Marshal for the Southern District of Georgia, Savannah Division (the "Marshal") pursuant to Local Admiralty Rule 4. (Ray Action, Doc. 70-1.) On August 8, 2016, the sale of the Vessel was duly conducted in accordance with the Order for Sale by the Marshal at the premises of the entrance to the United States District Court, Savannah, Georgia. (Ray Action, Doc. 66.) At the sale, non-party Strategic Shipping, Inc. ("Strategic") presented a bid of $7,400.000.00 USD (plus the current market price of any fuel or gas oil remaining on board the Vessel at the time of its delivery to the successful bidder) (collectively, the "Sale Price") and was the highest bidder capable of performing at the auction. (Id.) On August 8, 2016, Strategic presented $1,000,000.00 USD to the Marshal as security for payment of the remainder of its bid. On August 11, 2016, Strategic made a wire transfer to the Clerk of this Court in the amount of $6,400,000.00 USD to be applied towards its bid upon the successful confirmation of the sale held on August 8, 2016. The Court confirmed the sale of the Vessel to Strategic on August 16, 2016 (the "Confirmation Order"). (Ray Action, Doc. 75.) As set forth in the Confirmation Order, any claims in the Vessel existing on the date of the Confirmation Order – including those claims held by the Interested Parties and other lienors - were terminated and the Vessel was sold to Strategic "free and clear of all liens and encumbrances," but any claims terminated thereby "would attach in the same amount and in accordance with their priorities to the proceeds of the sale as provided in 46 U.S.C. § 31326(b) . . . ." (Id. at 7-8.) On August 19, 2016, the Marshal executed and delivered to Strategic a Bill of Sale for the Vessel. (Ray Action, Doc. 79.) The Vessel was delivered to Strategic on August 21, 2016. (Ray Action, Doc. 86-1, ¶ 8.) The net proceeds from the sale of the Vessel (i.e., the substitute *res*) are presently deposited in the registry of this Court.

[3] On July 28, 2016, shortly before the sale of the Vessel, DHL filed a motion to consolidate the instant action with the Ray Action. (Doc. 11.) On August 25, 2016, the Court denied DHL's motion to consolidate on the grounds that the two actions did not present common questions of law or fact. (Doc. 13, at 3-4.) On September 8, 2016, DHL filed a motion to intervene in the Ray Action pursuant to Federal Rule of Civil Procedure Rule 24(a). (Ray Action, Doc. 80.) On October 4, 2016, the Court denied DHL's motion to intervene on the grounds that DHL had failed to demonstrate a sufficient interest relating to the property or transaction which is the subject of the Ray Action. (Ray Action, Doc. 94.) On October 11, 2016, DHL filed its Notice of Interlocutory Appeal seeking review of the Court's Order dated October 4, 2016. (Ray Action, Doc. 98.) DHL also filed an Emergency Motion for Stay Pending Appeal seeking an order staying the Ray Action (or in the alternative an order enjoining the distribution of the proceeds from the sale of the Vessel)

(Doc. 14, at 2; Doc 25-1, at 2.) On October 14, 2016, the Interested Parties filed a motion to vacate DHL's attachment and garnishment of the Vessel. (Doc. 16.) On November 18, 2016, the Court granted the Interested Parties' motion and vacated DHL's attachment and garnishment of the Vessel on the grounds that DHL had failed to demonstrate a *prima facie* admiralty claim as required under Supplemental Admiralty Rule B.[4] (Doc. 24.)

In the Ray Action, the Interested Parties have made three requests for the Court's authorization of $704,690.91 USD in *in custodia legis* expenses incurred by the Custodian – and advanced by the Interested Parties – from the time of the Vessel's arrest on April 19, 2016 through its delivery to its new owner on August 21, 2016. (Ray Action, Docs. 28, 69, 86.) The Court has granted all three of these motions, thereby authorizing a total of $704,690.91 USD in *in custodia legis* expenses associated with the arrest of the Vessel to date. (Ray Action, Docs. 48, 81, 97.) The Court has also granted two motions by the Interested Parties seeking reimbursement from the Vessel's sale proceeds

---

during the pendency of DHL's appeal of this Court's denial of its motion to intervene. (Ray Action, Doc. 99.) On November 1, 2016, the Eleventh Circuit denied DHL's Emergency Motion for Stay Pending Appeal. (Ray Action, Doc. 107.) On November 18, 2016, this Court also denied DHL's motion to stay the Ray Action pending DHL's aforementioned appeal. (Ray Action, Doc. 109.)

[4] On December 5, 2016, DHL filed a motion seeking reconsideration of the Order vacating its attachment and garnishment of the Vessel. (Doc. 27.) In a supporting affidavit attached thereto, DHL asserts that it has entered into a settlement agreement with the Sub-Charterer in relation to the Hong Kong arbitration. (Doc. 27-1, ¶ 24.) On February 22, 2017, DHL filed an "Unopposed Motion for Entry of Final Judgment" wherein DHL asserts it has entered into a final settlement agreement with Defendant Newlead Castellano Ltd. (Doc. 33.) Both of these motions (docs. 27 & 33) remain pending before the Court and will be addressed in subsequent separate orders.

presently held in the Court's registry, for a total of $704,690.91 USD paid out to the Interested Parties in reimbursement for their *in custodia legis* expenses. (Ray Action, Docs. 81, 108; see also Ray Action, Docs. 77, 101.)

On September 29, 2016, DHL filed its own motion in the Ray Action seeking authorization to pay – and reimbursement from the Court's registry for their advancement of – the $84,462.20 USD paid by DHL to the Custodian on August 25, 2016. (Ray Action, Doc. 90.) On October 5, 2016, the Court denied as moot DHL's aforementioned motion, but noted that DHL was "not precluded . . . from pursuing recovery of its *in custodia legis* expenses by properly moving for an order authorizing these expenses" in the instant action. (Ray Action, Doc. 94, at 9.) On December 1, 2016, DHL filed its present Motion to Distribute Proceeds of the Sale as *Custodia Legis* Expenses. (Doc. 25.)

## II. DISCUSSION

"A maritime lien is a special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises." Dresdner Bank AG v. M/V Olympia Voyager, 465 F.3d 1267, 1272 (11th Cir. 2006) (internal quotations and citations omitted). Relevant here, "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime

7

lien on the vessel." 46 U.S.C. § 31342(a); see also Dresdner Bank AG, 465 F.3d at 1272. Despite this general rule, however, "no lien can attach to a vessel while she is in judicial custody." Dresdner Bank AG, 465 F.3d at 1272 (citations omitted). Indeed, "[c]laims arising out of the care and operation of the vessel while it is in the custody of the court are not actually considered liens, as no lien can attach to a vessel while she is in judicial custody." Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc., 821 F.2d 1556, 1560-61 (11th Cir. 1987). Nonetheless, a person who provides such post-arrest services to a vessel may seek "reimbursement from the sale proceeds [of the vessel], ahead of all lienors, as an administrative cost . . . . as 'expenses of justice' in priority to all lien claims when the dictates of 'equity and good conscious' [sic] so require." Id. at 1561 (quoting New York Dock Co. v. Steamship Poznan, 274 U.S. 117 (1927)); Dresdner Bank AG, 465 F.3d at 1273; see also Payne v. S.S. Tropic Breeze, 423 F.2d 236, 239 (1st Cir. 1970) ("Expenditures while a ship is in custodia legis do not give rise to maritime liens. However, the Supreme Court has held that a district court, sitting in admiralty, has the equitable power to give priority to claims arising from the administration of property within the court's jurisdiction." (citing New York Dock Co., 274 U.S. 117)); but see Oil Shipping (Bunkering) B.V. v. Sonmez Denizcilik Ve

8

Ticaret A.S., 10 F.3d 176, 178 (3d Cir. 1993) ("Since the seizure revokes all authority to incur liabilities on behalf of the ship, one who renders services without first requiring the Court's permission, does so at his risk."); Bassis v. Universal Line, S. A., 484 F.2d 1065, 1068 (2d Cir. 1973) ("[T]hose furnishing custodial services to a ship *in custodia legis* are gambling on a wholly unpredictable result unless they take the precaution of having their services authorized in advance by an order of the custodial court." (internal quotations and citations omitted)).

Here, contrary to DHL's assertions, the Court has not previously authorized DHL to incur any *in custodia legis* expenses in connection with the Interested Parties' arrest/attachment – let alone DHL's now-vacated attachment – of the Vessel. Rather, the Court has granted the Interested Parties – and the Interested Parties only – authority to incur *in custodia legis* expenses in connection with the Vessel. (See Ray Action, Docs. 48, 81, 97.) Accordingly, DHL is relegated to the equitable remedies and the calm discretion of this Court in seeking reimbursement for the monies it advanced to the Custodian. Here, the Court finds that the equities of the case and good conscience counsel in favor of reimbursing DHL the monies advanced from the proceeds from the sale of the Vessel's (*i.e.*, the substitute *res*).

The Custodian, acting upon what originally appeared to be a valid attachment of the Vessel by DHL, instructed DHL to tender payment for the anticipated expenses to be incurred by the Custodian in connection with the Vessel from August 5, 2016 through its anticipated sale date. (See Doc. 25-1, at 5 ("I have discussed this unique situation with [Custodian's] counsel, Patrick Novak, in order to minimize our risk and ensure payment of custodial costs, which are projected to be approximately $214,000 – from this point in time through the likely sale date. The attached order [*i.e.*, the Order directing issuance of process of maritime attachment and garnishment of the Vessel in favor of DHL, Doc. 2] indicates [DHL] is responsible for their share; please immediately forward $107,000, representing half of the anticipated costs. Additionally, please execute and return the attached custody agreement.").) In response, DHL eventually advanced a portion of these *in custodia legis* expenses – albeit without the Court's explicit authorization to do so and subsequent to the Vessel's sale – on August 25, 2016, when it tendered $84,462.20 USD to the Custodian. (See Doc. 25-1, at 2, 13-14.) Further, the amounts tendered by DHL were actually applied by the Custodian to satisfy the expenses it incurred in preserving the Vessel for the benefit of the Interested Parties and other creditors. (See id., at 3; see also Ray Action, Doc. 86-1, at ¶ 13 & Ex. 1 (showing that DHL's advance of $84,462.20

USD was applied, along with the Interested Parties' advance of $704,690.91 USD, to satisfy the Custodian's total expenses of $789,153.11 USD associated with post-arrest preservation of the Vessel).) Significantly, the Interested Parties have been unable to advance a plausible reason why they would not otherwise have been responsible to the Custodian - and would not themselves have been able to seek authorization and/or reimbursement - for the amounts advanced by DHL had it elected not to do so. Moreover, the Court finds that it would be an unjust result to not reimburse DHL for the funds it advanced in connection with the Custodian's post-arrest preservation of the Vessel as DHL stands to obtain nothing from the Vessel's sales proceeds (*i.e.*, the substitute *res*) presently held in the registry.[5] Therefore, in accordance with the dictates of equity

---

[5] Indeed, regardless of whether DHL is successful in its pending appeal, motion for reconsideration, and/or "Unopposed Motion for Entry of Final Judgment," DHL's interest, if any, in the Vessel (and any substitute *res* thereof) is subordinate to those held by the Interested Parties. See 46 U.S.C. § 31326(b)(1) ("Each of the claims terminated under subsection (a) of this section attaches, in the same amount and in accordance with their priorities to the proceeds of the sale, except that . . . the preferred mortgage lien . . . has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens . . . [or] a maritime lien for necessaries provided in the United States."); Rainbow Line, Inc. v. M/V Tequila, 480 F.2d 1024, 1026 (2d Cir. 1973) (". . . British law, which grants no lien for the breach of a charter party . . . ."); see also Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla, 966 F.2d 613, 615 (11th Cir. 1992) ("[M]aritime liens are . . . . an aspect of substantive, rather than procedural maritime law. The contract agreed to by the parties in the present case states that English law shall govern. Such clauses are enforceable. Therefore, English substantive maritime law governs this dispute." (citations omitted)); Doc. 1-1, at 8-9 ("This Charter Party shall be governed by and construed in accordance with English Law."). Given the sizeable claims asserted by the Interested Parties against the defendants in the Ray Action, it is highly unlikely that any proceeds from the Vessel's sale (*i.e.*, the substitute *res*)

and good conscience, the Court exercises its discretion to order that DHL be reimbursed for the funds it advanced to the Custodian that were used for the post-arrest care of the Vessel, namely $84,462.20 USD.

### III. CONCLUSION

Upon the foregoing and due consideration, Plaintiff DHL's motion (doc. 25) is **GRANTED** in the amount of $84,462.20 USD. The Clerk is **DIRECTED** to disburse $84,462.20 USD from the funds held in the Court's registry in relation to the Ray Action, *Ray Capital Inc., et al v. M/V Newlead Castellano, et al.*, Case No. 4:16-CV-123 (S.D. Ga.), to counsel for Plaintiff DHL's escrow account, the details of which shall be provided directly to the Clerk by counsel under separate cover.[6]

**ORDER ENTERED** at Augusta, Georgia, this  15th  day of March, 2017.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

will remain in the Court's registry after the Interested Parties' claims are satisfied.
[6] As set forth in the Court's Order in the Ray Action dated August 8, 2016, (Ray Action, doc. 71), the Clerk is directed to deduct a fee from the income earned on the funds held in the Court's registry in relation to the Ray Action in the amount of ten (10%) percent of the income earned. See LR 67.3, SDGa.