IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

DHL PROJECT & CHARTERING
LIMITED,

    Plaintiff,

    v.

NEWLEAD HOLDINGS LTD.;
NEWLEAD SHIPPING S.A.;
NEWLEAD BULKERS S.A.;
NEWLEAD CASTELLANO LTD.;
GRAND VENETICO INC.; and
NEWLEAD VENETICO LTD.,

    Defendants.

CV 416-123

**O R D E R**

Before the Court is Plaintiff DHL Project & Chartering Limited's ("DHL") Motion for Reconsideration of Vacatur of Attachment and to Reinstate Attachment in Reduced Amount. (Doc. 27.) After a careful review of the relevant filings and law and the evidence properly before the Court, DHL's motion is **DENIED**.

**I. BACKGROUND**[1]

On May 25, 2016, upon the filing of DHL's verified complaint in the present action, the Court entered an order directing the issuance of process for maritime attachment and

---

[1] The Court has assumed the parties' familiarity with the facts and procedural history of this case. A more thorough summary is available in the Court's previous Orders. (See, e.g., Docs. 24 & 38; *Ray Capital Inc., et al. v. M/V Newlead Castellano, IMO No. 9686338, et al.*, Case No. 4:16-CV-093 (S.D. Ga.) (the "Ray Action"), Docs. 94 & 116.)

garnishment of the M/V Newlead Castellano, IMO No. 9686338 (the "Vessel"). (Docs. 1, 2.) On October 14, 2016, Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd., and Labroy Shiptrade Limited (collectively, the "Interested Parties") filed a motion to vacate DHL's attachment pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, which the Court granted on November 18, 2016. (Docs. 16, 24.) In addition to vacating the Order directing the issuance of process of martitime attachment and garnishment of the Vessel, the Court ordered DHL to show cause by no later than December 5, 2016 as to why the present case should not be dismissed for lack of jurisdiction. (Doc. 24, at 15.) On December 5, 2016, DHL filed its present motion for reconsideration.

Subsequent to the Court's vacatur of DHL's attachment of the Vessel, there have been several developments worthy of mention. First, on December 1, 2016, DHL and non-party Zheijiang Materials Industry Fuel Group Co., Ltd. (the "Sub-Charterer") entered into a "confidential settlement agreement" whereby, *inter alia*, DHL is obligated to the Sub-Charterer in the amount of $250,000.00.[2] (Doc. 27-1, ¶¶ 14(c), 24.) Second, on February 22, 2017, DHL filed a "Motion for Entry of Final Judgment," wherein it states that it has entered into a

---

[2] DHL has not provided a copy of its settlement agreement with the Sub-Charterer for this Court's review.

2

settlement agreement dated February 17, 2017 (the "Settlement Agreement") with Defendant Newlead Castellano Ltd. ("NCL") with regards to the claims made by DHL in the instant action, whereby, *inter alia*, NCL is obligated to DHL in the amount of $2,371,491.15 and has consented to the personal jurisdiction of this Court.[3] (Doc. 33; see also Settlement Agreement, *Ray Capital Inc., et al. v. M/V Newlead Castellano, IMO No. 9686338, et al.*, Case No. 4:16-CV-093 (S.D. Ga.) (the "Ray Action"), Doc. 118-1 at 4-14, ¶¶ 2 & 2(C); Power Decl., Ray Action, Doc. 118-1 at 1-2, ¶ 2.) Third, on March 20, 2017, the Court granted summary judgment in favor of the Interested Parties in the Ray Action and ordered NCL to show cause as to why its counterclaim for wrongful arrest against the Interested Parties should not be dismissed. (Ray Action, Doc. 116.) Fourth, On March 30, 2017, DHL filed a renewed motion to intervene in the Ray Action, which includes a response to the Court's order to show cause originally directed at NCL as well as a request that the Court reconsider its grant of summary judgment in favor of the Interested Parties. (Ray Action, Doc. 118.) Finally, on July 6, 2017, the United States Court of Appeals for the Eleventh Circuit issued its mandate vacating this Court's Order denying

---

[3] Further, as part of the Settlement Agreement, NCL has allegedly assigned its ownership interest in the Vessel's substitute *res* to DHL (up to the amount of $2,371,491.15 plus any costs and fees incurred by DHL in the present action and the Ray Action), as well as all of NCL's rights, defenses, and counterclaims with respect to the claims asserted by the Interested Parties in the Ray Action. (See Settlement Agreement, ¶ 2(B).)

3

DHL's intervention in the Ray Action and "remand[ed] the case to [this Court] to proceed as it sees fit in light of the current status of the case." (Ray Action, Doc. 126, at 3; Ray Action, Doc. 127.)

## II. DISCUSSION

A party may seek to alter or amend a judgment in a civil case within twenty-eight days after the entry of the judgment.[4] FED. R. CIV. P. 59(e). Because reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly, a movant must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. Bostic v. Astrue, No. 1:12-CV-082, 2012 WL 3113942, at *1 (S.D. Ga. July 31, 2012). A Rule 59(e) motion may not be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment," as "the only grounds for granting a Rule 59(e) motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007)

---

[4] A Court may also grant relief from a judgment or order pursuant to Rule 60(b). See Fed. R. Civ. P. 60(b). "The first five provisions of Rule 60(b) provide relief in specific circumstances, including in the event of mistake, fraud, or newly discovered evidence." Aldana v. Del Monte Fresh Produce N.A., Inc., 741 F.3d 1349, 1355 (11th Cir. 2014). When these specific circumstances are lacking, however, "Rule 60(b)(6) provides a catch-all, authorizing a court to grant relief from a judgment for 'any other reason that justifies relief.'" Id. (quoting FED. R. CIV. P. 60(b)(6)). To prevail under Rule 60(b)(6), however, a party "must demonstrate that the circumstances are sufficiently extraordinary to warrant relief." Id. (internal quotations and citations omitted).

4

(quotations omitted). "Rule 59(e) is not a vehicle for rehashing arguments already rejected by the court or for refuting the court's prior decision." Bostic, 2012 WL 3113942, at *1 (quoting Wendy's Int'l v. Nu-Cape Const., Inc., 169 F.R.D. 680, 686 (M.D. Ga. 1996)).

Here, DHL has failed to demonstrate newly discovered evidence, manifest errors of law or fact, or any other reason that would justify a finding that the Court should amend, alter, or otherwise grant DHL relief from the Order vacating DHL's attachment of the Vessel and its substitute *res*. Because all of the "new developments of fact" upon which DHL relies concern post-attachment developments (see Doc. 27, at 5-6), they are not valid bases for reinstating the attachment. See Dannebrog Rederi AS v. M/Y True Dream, 146 F. Supp. 2d 1307, 1311 (S.D. Fla. 2001) (In determining whether a writ of attachment under Rule B should issue, "[t]he court's inquiry must focus on the facts known at the time of the attachment." (citing W. Bulk Carriers (Australia), Pty. Ltd. v. P.S. Int'l, Ltd., 762 F. Supp. 1302, 1307 (S.D. Ohio 1991))); see also Transamerica Leasing Inc. v. Amazonica, No. 97-0556-CB-S, 1997 WL 834554, at *2 (S.D. Ala. June 26, 1997) ("When a defendant challenges the validity of an attachment, the burden is on the plaintiff to prove there was reasonable grounds for issuing the writ. In making its determination on this issue, the Court's inquiry must

5

focus on the facts known at the time of the attachment." (citations omitted)); but c.f. Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A., 1999 WL 33218589, at *4 (M.D. Fla. Nov. 17, 1999) (courts may consider evidence presented at post-arrest hearing that was not presented at time of original arrest to determine whether reasonable grounds existed to arrest vessel).

Furthermore, DHL's assertion that the Court erred in finding that DHL failed to demonstrate a valid *prima facie* admiralty claim against Defendants is nothing more than a thinly-veiled attempt to refute the Court's reasoning for vacating its attachment and to rehash DHL's previously-rejected arguments. (Compare Doc. 21, at 8-10; with Doc. 27, at 5-6.) Indeed, the Court has already heard, thoroughly considered, and rejected the very argument DHL now raises; while DHL argues that its complaint alleges a direct – as opposed to contingent – breach of contract claim against the relevant Defendants,[5] the

---

[5] (See Doc. 27, at 3 ("In [the] vacatur order, this Court reasoned that DHL had not pleaded a valid *prima facie* admiralty claim against the Defendants, because DHL's indemnity claims were contingent upon a finding that DHL was liable to [the Sub-Charterer] and because DHL 'has not alleged that Defendants have actually breached their agreement with DHL.' [(Doc. 24, at 11.)] But this analysis fails to consider the entirety of DHL's complaint: DHL has alleged a separate breach of contract by the Newlead Defendants pursuant to its own charter party, based on the Defendants' failure to provide a seaworthy vessel. [(]See [Doc.] 1 at 6-7.[)]"); see also Doc. 27, at 6 ("Simply, DHL adequately alleged that the Defendants had a duty to provide a seaworthy vessel, and that the cracking of the hull and detention of the vessel due to these structural deficiencies was clear evidence of breach . . . .").)

6

paragraphs of its complaint on which it relies[6] for such argument are the exact paragraphs that this Court explicitly found to state only a <u>contingent</u> breach of contract claim for which attachment under Rule B is not available.[7] (<u>See</u> Doc. 24, at 9-15.) In sum, because "a claim for indemnity does not accrue until a plaintiff has actually made a payment to the third

---

[6] <u>See</u> Doc. 1, ¶¶ 21 ("DHL has a <u>contingent</u> indemnity claim . . . for breach of the charter party in connection with the deficiencies found with the vessel [M/V Newlead Venetico] . . . ." (emphasis added)); <u>id.</u> ¶ 24 ("<u>If</u> there is a finding in the sub-charter arbitration [between DHL and the Sub-Charterer in Hong Kong] that there was a personal want of due diligence to make the vessel seaworthy on the part of Owners for which DHL is responsible, Newlead Shipping, Newlead Bulkers, and Grand Venetico Inc. <u>will have breached</u> their obligations to DHL with respect to seaworthiness and maintenance, which caused the detention of the vessel [M/V Newlead Venetico] in Australia, the delays in the delivery of cargo, and the losses claimed by [the Sub-Charterer]." (emphasis added)); <u>id.</u> ¶ 25 (" . . . Grand Venetico Inc., and/or Newlead Shipping and Newlead Bulkers have <u>contingent</u> joint and several liability to DHL." (emphasis added)); <u>id.</u> ¶ 26 (" . . . Newlead Shipping, Newlead Bulker and/or Newlead Holdings have <u>contingent</u> joint and several liability for the contractual breach as successors-in-interest to Grand Venetico Inc." (emphasis added)); <u>see also id.</u> ¶ 20 ("<u>Upon a finding by the Hong Kong arbitration panel that there was</u> a personal want of due diligence on the part of [Defendants] Newlead Shipping and/or Grand Venetico, Inc. to make the [M/V] Newlead Venetico seaworthy, for which DHL is responsible, DHL <u>will be</u> liable to [the Sub-Charterer] and will thereafter pursue its claim against Newlead Shipping and/or Grand Venetico Inc. in London Arbitration for indemnity pursuant to the time charter." (emphasis added)); <u>id.</u> ¶ 71 ("The underlying dispute arising from the charter party is based on an indemnity claim for an arbitration award which <u>may</u> be issued against DHL in Hong Kong arbitration." (emphasis added)).) Notably, while DHL baldly states in a footnote to its complaint that it has "direct contract claims against Newlead Shipping and/or Grand Venetico as 'owner(s)' pursuant to the charter party," DHL never provides any explanation as to the factual or legal basis for these "direct" claims. (<u>See id.</u> ¶ 21 n.3.)

[7] DHL also takes issue with the Court's observations that: (a) DHL did not initiate the London arbitration proceedings against Defendants Grand Venetico Inc. and Newlead Shipping S.A. until after having obtained attachment of the Vessel in the present action; and (b) the London arbitration proceedings do not include NCL as a party thereto. Neither of these observations, however, is essential to the Court's paramount conclusion that DHL's primary claim for breach of contract was, at the time of attachment, a prospective contingent indemnity claim for which attachment under Rule B was not available. (<u>See</u> Doc. 24, at 12-13.) Rather, these observations were simply additional examples of the contingent nature of Plaintiff's claims.

7

party" under English law[8] and DHL had not made a payment to the Sub-Charterer nor alleged a direct breach of contract claim against Defendants at the time it sought attachment, DHL's claims against Defendants were unripe and vacatur of DHL's attachment was proper. See Bottiglieri Di Navigazione SPA v. Tradeline LLC, 293 F. App'x 36, 37 (2d Cir. 2008) (upholding vacatur of attachment where plaintiff's indemnity claim was unripe under English law because plaintiff had yet to incur liability to third party); see also Blue Whale Corp. v. Grand China Shipping Dev. Co., 722 F.3d 488, 495 (2d Cir. 2013) ("Admiralty law provides the remedy; substantive law defines the right to the remedy. Assessing the prima facie validity of a claim is a substantive inquiry that should be governed by the relevant substantive law. By contrast, whether a claim sounds in admiralty is a procedural question, the answer to which supplies the source of a court's subject matter jurisdiction."). DHL therefore has failed to demonstrate any error in the Court's Order vacating attachment that would affect that ruling or otherwise necessitate its reversal.[9]

---

[8] The charter party contract which forms the basis of DHL's breach of contract claim against Defendants is governed by English law. (See Doc. 1-1, at 8-9 ("This Charter Party shall be governed by and construed in accordance with English Law.").)

[9] To the extent that it may hereafter seek to attach the Vessel's substitute *res* on the basis of the facts as they presently exist, this remedy is not available because of DHL's settlement of its breach of contract and alter-ego claim with NCL; by way of the Settlement Agreement, DHL no longer has an active case or controversy against the owner of the Vessel's substitute *res*, NCL. See Yunker v. Allianceone Receivables Mgmt., Inc., 701 F.3d 369, 372

## III. CONCLUSION

Upon the foregoing and due consideration, DHL's Motion for Reconsideration of Vacatur of Attachment and to Reinstate Attachment in Reduced Amount (doc. 27) is **DENIED**. Moreover, the Court continues to have serious concerns regarding its jurisdiction over the present case. Accordingly, DHL shall show cause **by no later than Friday, September 29, 2017,** why DHL's claims against Defendants Newlead Shipping S.A., Newlead Castellano Ltd., Grand Venetico Inc., and Newlead Venetico Ltd. should not be dismissed for lack of jurisdiction.[10]

---

(11th Cir. 2012) ("A case becomes moot when it no longer presents a live controversy with respect to which the court can give meaningful relief. As a general principle, settlement between the parties in litigation renders the case moot." (internal quotations and citations omitted)); U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744, 747 (11th Cir. 1991) ("[T]he controversy must be 'live' throughout the case; federal jurisdiction is not created by a previously existing dispute." (citations omitted)). Moreover, even were DHL to allege that NCL breached the Settlement Agreement, DHL could not seek attachment under Rule B because such a claim would not sound in admiralty. See D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd., 756 F.3d 151, 159 (2d Cir. 2014) ("[A]n agreement to pay to resolve a maritime claim is not itself a maritime contract and does not confer admiralty jurisdiction over a subsequent suit on that agreement to resolve the underlying maritime claim."); Consol. Bathurst, Ltd. v. Rederiaktiebolaget Gustaf Erikson, 645 F. Supp. 884, 886 (S.D. Fla. 1986) ("An agreement to satisfy an obligation arising from a maritime tort or contract is not a maritime contract, and an action for breach of such a contract is not an admiralty claim.").

[10] DHL initiated this action on May 25, 2016. (See Doc. 1.) To date, however, Plaintiff has only purported to serve Defendants Newlead Holdings Ltd., Newlead Bulkers S.A., and NCL. (See Docs. 26, 28, and 29.) While the 90-day deadline for service imposed by Federal Rule of Civil Procedure 4(m) does not apply to service on foreign defendants, a plaintiff is still bound to "deploy reasonable due diligence in attempting service of process on a foreign defendant." See Brown v. True & Assocs., Ltd., Case No. 4:12-CV-233, 2012 WL 5364346, at *1 n.1 (S.D. Ga. Oct. 22, 2012) (citing Lozano v. Bosdet, 693 F.3d, 485 (5th Cir. 2012)). Moreover, because DHL asserts that it has settled it claims against NCL, its standing to maintain an action against NCL appears lacking. See Yunker, 701 F.3d at 372; U.S. Fire Ins. Co., 931 F.2d at 747.

**ORDER ENTERED** at Augusta, Georgia, this 12th day of September, 2017.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA