IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION
IN ADMIRALTY

DHL PROJECT & CHARTERING        *
LIMITED,                        *
                                *
     Plaintiff,                 *
                                *
          v.                    *      CV 416-123
                                *
NEWLEAD HOLDINGS LTD.;          *
NEWLEAD SHIPPING S.A.;          *
NEWLEAD BULKERS S.A.;           *
NEWLEAD CASTELLANO LTD.;        *
GRAND VENETICO INC.; and        *
NEWLEAD VENETICO LTD.,          *
                                *
     Defendants.                *

O R D E R

Before the Court is Plaintiff DHL Project & Chartering Limited's ("DHL") Motion for Entry of Final Judgment.[1] (Doc. 33.) In its motion, DHL states that it has entered into a settlement agreement (the "Settlement Agreement") with Defendant Newlead Castellano Ltd. ("NCL") with regards to the claims made by DHL in the instant action, whereby NCL is obligated to DHL in

---

[1] Non-parties Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd., and Labroy Shiptrade Limited (the "Non-Parties") filed an opposition to DHL's present motion. (Doc. 36; see also Doc. 39 (DHL's reply in support of its present motion).) DHL filed a motion to strike the Non-Parties' opposition. (Doc. 40; see also Doc. 41 (Non-Parties' response in opposition to DHL's motion to strike).) Because the Court's denial of the relief requested by DHL in its present motion does not rely on the Non-Parties' opposition, DHL's motion to strike (doc. 40) is **DENIED AS MOOT**.

the amount of $2,371,491.15.[2]  (Id. at 2; see also Settlement Agreement, *Ray Capital Inc., et al v. M/V Newlead Castellano, et al.*, Case No. 4:16-CV-123 (S.D. Ga.) (the "Ray Action"), Doc. 118-1 at 4-14; Power Decl., Ray Action, Doc. 118-1 at 1-2, ¶ 2.) DHL also states that it and NCL executed a "Consent for Entry of Judgment" which "has not been styled as a Stipulation due to the fact that [NCL] is not represented by U.S. counsel who is admitted to this Court." (Doc. 33, at 2; see also Consent for Entry of Judgment, Doc. 33 at 3-5.) Finally, DHL requests that "Final Judgment be entered against [NCL] . . . in the amount of $2,371,491.15 in the form of the proposed Final Judgment" which DHL has attached as an exhibit to its motion (the "Proposed Final Judgment"). (Doc. 33 at 2; see also Proposed Final Judgment, Doc. 33-1.)

Parties to litigation often resolve their dispute by private settlement. "If the parties to a suit enter into an extrajudicial settlement or compromise, there is no judgment," Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 538 (5th Cir. 1978), however, and "the only penalty for failure to abide by the agreement is another suit," United States v. City of Miami, 664 F.2d 435, 439 (5th Cir. 1981).

---

[2] Notably, DHL failed to file a copy of the Settlement Agreement in connection with its present motion. Approximately one month later, however, DHL filed a copy of the Settlement Agreement in connection with its motion for reconsideration of the Order granting summary judgment in favor of the Non-Parties in the Ray Action. (See Ray Action, Doc. 118-1, at 4-14.)

2

"Litigants, therefore, have sought to reinforce their compromise and to obtain its more ready enforceability by incorporating it into a proposed consent decree and seeking to have the court enter this decree." Id. ("A consent decree, although founded on the agreement of the parties, is a judgment. . . . As a judgment, it may be enforced by judicial sanctions, including citation for contempt if it is violated." (internal citations and footnote omitted)). Indeed, "[t]he parties have a right to compromise their dispute on mutually agreeable terms, and these terms may include the incorporation of their settlement into a judicial decree." Id. at 440.

Nevertheless, "[t]he entry of a consent decree is more than a matter of agreement among litigants. It is a 'judicial act.'" League of United Latin Am. Citizens, Council No. 4434 v. Clements, 999 F.2d 831, 845 (5th Cir. 1993) (quoting United States v. Swift & Co., 286 U.S. 106, 115 (1932)). Accordingly, "[w]hen presented with a proposed consent decree," a trial court "must not give it perfunctory approval" and "must not merely sign on the line provided by the parties." City of Miami, 664 F.2d at 440-41; see also Stovall v. City of Cocoa, 117 F.3d 1238, 1242 (11th Cir. 1997) ("[J]ust because the settlement agreement was binding upon the parties does not mean it was binding on the district court." (citations omitted)); Clements, 999 F.2d at 845 ("Even if all of the litigants were in accord,

3

it does not follow that the federal court must do their bidding."). Rather, before approving a proposed consent judgment the Court must ascertain "that the settlement is fair, adequate, and reasonable." City of Miami, 664 F.2d at 441 (internal quotations omitted); see also Cotton v. Hinton, 559 F.2d 1326, 1330 (5th Cir. 1977) ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." (citing Young v. Katz, 447 F.2d 431 (5th Cir. 1971))); Janus Films, Inc. v. Miller, 801 F.2d 578, 582 (2d Cir. 1986) ("Though the judge does not merely sign on the line, he or she normally makes only the minimal determination of whether the agreement is appropriate to be accorded the status of a judicially enforceable decree." (internal quotations and citations omitted)). Indeed, "[d]istrict courts should approve consent decrees so long as they are not unconstitutional, unlawful, unreasonable, or contrary to public policy." Stovall, 117 F.3d at 1240 (citations omitted); see also City of Miami, 664 F.2d at 441 n.13 ("The trial court in approving a settlement need not inquire into the precise legal rights of the parties nor reach and resolve the merits of the claims or controversy, but need only determine that the settlement is fair, adequate, reasonable and appropriate under the particular facts and that

4

there has been valid consent by the concerned parties." (quoting Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights, 616 F.2d 1006, 1014 (7th Cir. 1980))); Cotton, 559 F.2d at 1330 ("Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." (citations omitted)).

Having reviewed DHL's present motion, the Consent for Entry of Judgment, the Proposed Final Judgment, and the underlying Settlement Agreement, the Court concludes that they should not be accorded the status of a judicially-enforceable decree. As an initial matter, the Court will not regale the reader with the long and winding history of the present action and/or the ostensibly-related Ray Action and their respective factual underpinnings, other than to note that: (i) both cases consist of a series of claims by the relevant plaintiffs against NCL (and others) and/or its assets, including the proceeds resulting from the judicial sale of the M/V Newlead Castellano (the "Vessel") that are presently deposited in the Court's registry in relation to the Ray Action (the "Proceeds"); (ii) the Court is thoroughly familiar with the relevant facts as well as the litigants and their respective positions and strategies; and (iii) the Court has some reservations regarding DHL's conduct and candor in connection thereto. (See, e.g., Docs. 24 & 38 (wherein the Court provides a thorough history of the present

5

action and its intersection with the Ray Action); Ray Action, Docs. 94 & 116 (same).)

Second, while the Court has no doubts that NCL may enter into and be bound by a private agreement with DHL, the Court will not enshrine such extrajudicial action in a judicial decree given that NCL has not entered a formal appearance in this matter and is presently unrepresented by an attorney admitted to practice before this Court. In effect, DHL is asking the Court to take judicial action on behalf of an unrepresented opposing entity that is not properly before the Court, which this Court will not do. See Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985) (a corporation may not proceed *pro se* or by a representative or agent of the corporation); Reynolds v. Roberts, 251 F.3d 1350, 1357 (11th Cir. 2001) ("Lacking the consent of all of the parties, the court obviously lacked the power to enter a decree purportedly based on consent, for it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all." (internal quotations and citations omitted)).

Third, the Court harbors significant concerns regarding the reasonableness of the Settlement Agreement. NCL, who is not even primarily responsible for DHL's loss,[3] has settled for the

---

[3] Notably, the only defendants against which DHL has asserted its primary breach of contract claim are Defendants Newlead Shipping S.A., Newlead Bulkers S.A., and Grand Venetico Inc. (Doc. 1, ¶¶ 21-26.) DHL's only claim

6

full amount of damages asserted in this action by DHL (including DHL's costs and fees in both the present lawsuit *and* the Ray Action).[4] (See Settlement Agreement ¶ 2; see also Consent for Entry of Final Judgment & Proposed Final Judgment.) In exchange, DHL has agreed to "first pursue recovery of the recovery of the Settlement Amount [i.e., $2,371,491.15] from the [Proceeds] and . . . initiate additional proceedings against [NCL] only insofar as they are in support of and facilitate DHL's recovery of the [Proceeds]" and to refund to NCL any

---

against NCL is that it is an alter ego of the aforementioned defendants. (Id. ¶¶ 27-69.)

[4] Notably, DHL initially alleged total damages in the amount of $14,303,762.90. (Doc. 1, ¶ 74.) In its motion requesting reconsideration of the vacatur of its Rule B attachment of NCL's in-district assets, DHL now asserts that its total damages are $2,371,491.15. (Doc. 27, at 3-4.) DHL asserts that this reduced damages calculation consists of: (a) a $250,000.00 settlement payment made by DHL to a third-party sub-charterer pursuant to "a confidential settlement agreement dated [] December [1,] 2016," for which the Defendants are allegedly liable to reimburse DHL; (b) "lost" demurrage claims that, but for the breaches allegedly committed by Defendants Grand Venetico Inc. and/or Newlead Shipping S.A., allegedly would have been recovered by DHL from the third-party subcharterers in the amounts of $27,873.09 and $1,143,618.06; (c) "unrecoverable costs incurred in defending [the third-party subcharterer's] claims in the amount of $750,000;" and (d) "costs incurred in seeking security for DHL's claims against [Defendants Grand Venetico Inc. and/or Newlead Shipping S.A.] in the United States in the amount of $200,000." (See Doc. 27-1, at ¶¶ 14-29.) Yet even the individual responsible for these new figures – namely, the attorney who represented DHL in the underlying arbitration held in Hong Kong between DHL and the sub-charterer – questions their veracity. (See id. ¶ 14 n.1 ("Whilst by reason of [Defendants Grand Venetico Inc. and/or Newlead Shipping S.A.'s] breach DHL have lost the chance to claim demurrage/damages for detention under the sub-charter for the long period of detention in relation to loading after the short-term certificates were issued by Class in a sum of $1,143,618.06, DHL accept [sic] that credit would have to be given for the fact that the '[M/V] Newlead Venetico' was placed off-hire under the head charter during this period.").) Nonetheless, in the Settlement Agreement, DHL has agreed to release its claims against NCL in exchange for $2,371,491.15 and a "reimburse[ment] from any amount recovered from the [Proceeds]" for "DHL's costs and fees resulting from the United States Actions [*i.e.*, the present action and the Ray Action], including but not limited to defending the claims of the [Non-Parties] to the funds currently on deposit in the Court Registry . . . ." (Settlement Agreement ¶ 2.)

7

excess funds "released to DHL from the Court['s r]egistry . . . over and above the Settlement Amount and DHL['s c]osts . . . in accordance with the terms of this Agreement and addendum or side-agreement."[5] (See Settlement Agreement ¶¶ 2(A), 3(B); see also id. ¶ 3(C) ("[NCL] shall be absolved of any and all obligations towards DHL other than those set forth in Paragraph 2, above.").) Further, NCL has agreed to "cooperate as is reasonably necessary with DHL and provide assistance and information . . . in order to support DHL" in its attempts to undermine the claims against the Proceeds by Ray Capital Inc., Oppenheim Capital Ltd., Cheyenne Holdings Ltd., and Labroy Shiptrade Limited (the "Non-Parties") in the Ray Action. (Id. ¶ 6.) When viewed in the light of the proceedings to date in both

---

[5] The Court's concerns are exacerbated by the inclusion in the Settlement Agreement of terms which contemplate a side agreement that would take precedence over the Settlement Agreement that forms the basis of the Consent for Entry of Final Judgment and proposed Final Judgment order. (See Settlement Agreement ¶ 3(B) ("In case of any conflicts between the terms of this agreement and/or the terms of the addendum or side agreement, the terms of the addendum or side agreement to prevail.").) While a superseding agreement may not actually exist between DHL and NCL - and even if it did, it would not necessarily be fatal to the entry of a consent decree - it is another source of apprehension for the Court. See, e.g., Janus Films, Inc. v. Miller, 801 F.2d 578, 584-85 (2d Cir. 1986) ("[T]he omission of any reference to the side agreement raises an issue of concern to the administration of justice. . . . In other contexts the lack of any reference even to the existence of a side agreement would be called a material omission. On the other hand, courts also have a responsibility to promote settlements, and a rigid requirement that parties make full disclosure of the terms of all side agreements that accompany the entry of a judgment might well prevent the consummation of some settlements. . . . If the parties to a dispute involving . . . interests likely to be asserted against other members of the public are reluctant to disclose the terms of their agreement for satisfaction of the judgment agreed to be entered, they remain free to forgo entry of a judgment and settle their litigation by a withdrawal of action, keeping confidential all aspects of their settlement. They may not, however, secure a judicial imprimatur for an obligation that the parties have agreed means less than its terms state.").

this action and the Ray Action – particularly the fact that DHL and NCL stand to receive nothing from the Proceeds if the summary judgment granted to the Non-Parties in the Ray Action endures – DHL and NCL's collusive machinations are clear. See, e.g., Sidman v. Travelers Cas. & Sur., 841 F.3d 1197, 1205-06 (11th Cir. 2016) (settlement agreement negotiated in bad faith where party "was willing to lie down and accept a judgment of any amount against it so long as it would not be on the hook to satisfy the judgment"). The Court will not endorse an agreement tainted with such a palpable appearance of impropriety.

Finally, as a practical matter, the Court sees no particular reason why it should enter a consent decree – and thereby retain jurisdiction over this matter – given that the parties and their controversy have no substantive connection with this forum,[6] the Settlement Agreement itself is governed by

---

[6] DHL is a Hong Kong entity. (Doc. 1, ¶ 4.) NCL is a Liberian entity. (Id. ¶ 8.) The other named defendants are also foreign entities. (Id. ¶¶ 5-7, 9-10.) The conduct and/or loss giving rise to the parties' dispute has no identifiable connection to the State of Georgia, let alone the United States of America. (Id. ¶¶ 13-20.) Indeed, DHL admits that the only reason it initiated suit in this forum is because it desired to attach the tangible property of NCL pursuant to Supplemental Rule B (namely, the Vessel, which had temporarily docked in the Port of Savannah to unload a cargo shipment). (Id. ¶ 71 ("[DHL] brings this action solely to obtain *quasi in rem* jurisdiction over Defendants and security for its claims.").) Notably, the Court subsequently vacated DHL's attachment of that asset and its substitute *res* (*i.e.*, the Proceeds). (See Doc. 24.) Moreover, as noted by DHL, "[a]lthough DHL initially sought to attach the vessel in order to obtain security and obtain *quasi in rem* jurisdiction to litigate its *in personam* claims, [NCL's] settlement of the dispute and consent to jurisdiction makes the attachment unnecessary." (Doc. 39, at 6.)

the laws of the State of New York,[7] the parties to the Settlement Agreement have explicitly consented to personal jurisdiction and venue lying in the State of New York for the enforcement thereof,[8] and the fact that the Court would no longer have jurisdiction over any alleged breach of the Settlement Agreement absent its enshrinement in a consent decree.[9]

Accordingly, upon the foregoing and due consideration, DHL's Motion for Entry of Final Judgment (Doc. 33) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 13th day of September, 2017.

```
                    _____
                    J. RANDAL HALL, CHIEF JUDGE
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF GEORGIA
```

---

[7] (See Settlement Agreement ¶ 14 ("This Agreement shall be interpreted, construed, and enforced in accordance with the laws of the [S]tate of New York, the United States.").)

[8] (See Settlement Agreement ¶ 15 ("This Agreement shall be deemed to have been executed and delivered in the State of New York, United States of America. The Parties hereby consent to venue and personal jurisdiction in the State of New York, in the event of any controversy or claim arising out of or relating to this Agreement and the enforcement of this Agreement by either party.").)

[9] See D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd., 756 F.3d 151, 159 (2d Cir. 2014) ("[A]n agreement to pay to resolve a maritime claim is not itself a maritime contract and does not confer admiralty jurisdiction over a subsequent suit on that agreement to resolve the underlying maritime claim."); Consol. Bathurst, Ltd. v. Rederiaktiebolaget Gustaf Erikson, 645 F. Supp. 884, 886 (S.D. Fla. 1986) ("An agreement to satisfy an obligation arising from a maritime tort or contract is not a maritime contract, and an action for breach of such a contract is not an admiralty claim. Nor can jurisdiction be grounded on diversity where all of the parties are foreign." (citing Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 491-92 (1983); 28 U.S.C. § 1332)).